MIAMI CIGAR & TOBACCO CO., APPELLANT, *v.* PECK, TAX COMMR., ET AL., APPELLEES.

(No. 2271—Decided December 7, 1954.)

*Mr. Ralph A. Skilken,* for appellant.

*Mr. C. William O'Neill,* attorney general, and *Mr. Ralph N. Mahaffey,* for appellees.

HORNBECK, J. This is an appeal from a decision of the Board of Tax Appeals, hereinafter referred to as the board, affirming an order of the Tax Commissioner, hereinafter referred to as the commissioner, fixing the value for taxation for the year 1952 of certain cigarette vending machines of appellant.

The board decreased the annual depreciation rate from the 20 per cent applied by appellant in its return to 10 per cent and held that such rate was the correct basis for determination of the true value of the machines.

This is the first case submitted since this court was given jurisdiction to review decisions of the board, and we are impressed with our limited knowledge of the subject. However, we have been helped by the opinion of the attorney examiner on the appeal to the board and with the briefs of counsel.

The attorney examiner in his opinion succinctly states the question presented for determination, namely: What is the period of actual usefulness of the machines, whether five years, as claimed by the appellant, or ten years as found by the commissioner?

The section of the statute which is the basis for determination of true value of the personal property involved is Section 5389, General Code:

"In the case of personal property used in business, the book value thereof, if any, less book depreciation, at such time or times, shall be listed and such depreciated book value shall be taken to be the true value of such property, unless the assessor shall find that such depreciated book value is greater or less than the then true value of such property in money."

This language makes the book value of the property, less book depreciation at listing time, prima facie evidence of the true value of the property in money. Appellant, in listing its property, conformed to this statute. The Tax Commissioner, using what is known as Computation Directive No. 302, held that the annual depreciation rate of 20 per cent applied by appellant was too high and fixed the depreciation rate at 10 per cent. In so doing, insofar as we can determine, the commissioner relied wholly on the above directive. It is insisted by appellant that the board on appeal did likewise, and failed to

give proper consideration to the other facts which justified the valuation appearing in the return of appellant.

The hearing before the Board of Tax Appeals on an appeal from an order of the Tax Commissioner is a trial *de novo*.

"In an appeal from an assessment based on an alleged erroneous valuation of intangible personal property by the Tax Commissioner, the Board of Tax Appeals is required to consider the entire evidence anew and arrive at its own valuation based on the evidence before it." *Clark* v. *Glander, Tax Commr.*, 151 Ohio St., 229, 85 N. E. (2d), 291, paragraph one of the syllabus.

The appeal was so heard and the respective claims were fully developed. In the written opinion of the attorney examiner of the board, many of the factors were considered which appellant contended supported its return.

*W. L. Harper Co.* v. *Peck, Tax Commr.*, and *Richter Transfer Co.* v. *Peck, Tax Commr.*, 161 Ohio St., 300, 118 N. E. (2d), 643, and *Willard Storage Battery Co.* v. *Peck, Tax Commr.*, 161 Ohio St., 197, 118 N. E. (2d), 514, all hold that although directives, one of which was applied in this case, are properly used and do in general reflect the true value of personal property, they may not be rigidly adhered to, and full consideration must be given to all the circumstances and facts pertinent to the issue.

It is our considered judgment that, although the board through its attorney examiner, discussed the facts developed by appellant, it gave major consideration to its directive. We believe that the actual transactions of the appellant in the handling and disposal of about half of the total number of machines that it had in operation and the prices received for them should weigh more heavily in fixing their true value than any rule, however well recognized.

Special consideration must be given to the high rate of obsolescence peculiar to these cigarette vending machines. There was no general market for them. They were of value only to a small and restricted number of dealers. It is testified, and not denied, that in comparatively recent years the machines have rapidly changed in many particulars. They were origi-

nally operated manually, changed to electrical operation, and at present the approved operation is manual. The variation in the cost of cigarettes required mechanical alteration in the machines, as did the later development of what is known as king-size cigarettes, necessitating the placing of additional stacks to accommodate the greater variety of packs. It develops that there was an ever-present urge to induce the installation of new machines with improved appearance and enhanced public appeal. It further appeared that heavy usage of the machines in certain locations necessitated frequent investigation and repairs, so that after a certain time in use it became more profitable to discard the old or change them to a less active location and to install new ones.

From 1947 to 1951 the appellant company had a record of sales of its vending machines, the total amount of which conformed approximately to the book value which it set up as a basis of the value of the machines listed for taxation in 1952. Upon a depreciation rate of 20 per cent as to most of the machines, and 30 per cent as to some of the very old ones, the return to the company produced a profit average of $2.71 per machine. In this compilation value received included not only cash sale price but also the amounts allowed in trade-in on new machines. It is common observation that, in general, trade-in allowances are in excess of true market value. Had the machines been valued upon a 10 per cent depreciation rate the loss in the sale would have been almost $8,000.

It is urged that the date of acquisition of the machines does not appear, and that this was an element which must be considered in fixing their value. It appears to us, inasmuch as the annual rate of depreciation used by the company is agreed, that the date of acquisition could easily have been determined. It is also asserted that upon appellant's own testimony it appears that the machines had a useful life expectancy in excess of five years. Even so, they were then taxable at the minimum valuation fixed by statute. The evidence does show that some of the machines were used for more than five years, but we cannot find in any instance where they were used as long as ten years. The president of appellant company testified that

the normal useful life of the machine was not more than five years. There is quite a spread between a 20 per cent and 10 per cent depreciation rate which might, upon further development of the facts, be applicable to the appraisal here.

We recognize the limitation upon our authority to hold that the decision of the board is unreasonable, and that we may not substitute our judgment for that of the board; *Fair Store Co.* v. *Board of Revision,* 145 Ohio St., 231, 61 N. E. (2d), 209. However, we cannot avoid the conclusion that the board relied too implicitly on its directive and did not accord proper weight to the facts and circumstances developed by the appellant tending to prove that the return as made by it was proper.

The board had access to valuation of machines like these under consideration, and wide experience in such cases, but none of this appears in the record. Nor was there any attempt on the part of counsel for the board to elicit the information upon which the board rested its decision in part, namely, the date of acquisition of the machines which were sold.

In our judgment the decision of the board was unreasonable. It will be and hereby is reversed and the cause remanded for further consideration according to law.

*Judgment reversed.*

WISEMAN, P. J., and MILLER, J., concur.