THE NESTLE CO., INC., APPELLANT, *v.* PORTERFIELD, TAX
COMMR. OF OHIO, APPELLEE.

[Cite as Nestle v. Porterfield (1971), 28 Ohio St. 2d 190.]

(No. 71-149—Decided December 29, 1971.)

192

Messrs. *Schottenstein, Garel, Swedlow & Zox* and Mr. *Harvey Dunn*, for appellant.

Mr. *William J. Brown*, attorney general, and Mr. *Peter A. Stratigos*, for appellee.

*Per Curiam.* Appellant's first contention is that the board was without jurisdiction to set a tax assessment against 100% of the Sunbury inventory, since the only error alleged by appellant was the failure of the Tax Commissioner to eliminate the reported inventories at Sunbury when he allegedly substituted the "correct" taxable inventories at 10% and 7%.

R. C. 5717.03 sets out, in part, the effects of decisions by the board:

"The decisions of the board may affirm. reverse, vacate, or *modify* the tax assessments, valuations, determinations, findings, computations, or orders complained of in the appeals or applications determined by it * * *." (Emphasis added.)

In essence, appellant, by its appeal to the board, asked for a modification of the assessment against the Sunbury inventory for return years 1965, 1966 and 1967.

R. C. 5717.03 authorizes the board to make its own investigations and findings, independent of those of the Tax Commissioner. *Pennsylvania R. Co.* v. *Porterfield* (1971), 25 Ohio St. 2d 223, 267 N. E. 2d 792. Upon the basis of those independent investigations and findings, the board was authorized by R. C. 5717.03 to modify the tax assessment complained of in the appeal. *Clark* v. *Glander* (1949), 151 Ohio St. 229, 85 N. E. 2d 291; *Bloch* v. *Glander* (1949), 151 Ohio St. 381, 86 N. E. 2d 318. Once its jurisdiction to modify was invoked, the board was not restricted solely to that modification suggested by the appellant. It could, and did, "modify the order complained of," the question now being the reasonableness and lawfulness of that modification.

Appellant's second contention is that both it and the Tax Commissioner agreed at the hearing before the board that 10% of the tea and 7% of the coffee inventories at both locations represented an accurate approximation of appellant's current operating needs, and that it was error for the board to arrive at another figure, *i. e.,* a 100% assessment against the Sunbury inventory. In support of this contention, appellant cites extensively from the transcript and the entry of the board.

We have examined the whole record and conclude that appellant's reliance upon it is misplaced. In considering the transcript of testimony before the Board of Tax Appeals, the true import of the Tax Commissioner's concessions regarding the 110% and 107% assessment against the Sunbury inventory for 1965, 1966 and 1967 becomes evident.

At page 52 *et seq.* of the transcript is found:

"Mr. Heckman [for the Tax Commissioner]: Your Honor, at this time, maybe it would be well to stipulate into the record that on the three years in which the assessments of ten and seven per cent on raw tea and raw coffee

were added to the hundred percent returns on those items *at Sunbury*, there was an error on the part of the Tax Commissioner and we will not be challenging *that portion of the increased assessment.*'' (Emphasis added.)

"Examiner Hendershot: Wait a minute. Let me see if I understand what you are saying, Mr. Heckman.

"You are saying that you want to go along with a prior assessment or reporting assessment of one hundred percent *at Sunbury*?

"Mr. Heckman: *Yes*, we concede we are erroneously adding ten and seven.'' (Emphasis added.)

And at page 82 *et seq.*:

"Examiner Hendershot: Is there any contention on behalf of the Tax Commissioner that the ten percent and seven percent are not proper?

"I know the letter from the representative of the Tax Commissioner is not attached to each—

"Mr. Heckman: *We have not raised the question of ten and seven percent being proper because we determined that was the current operating need, however, that only applies to import inventory. We contend that the inventory at Sunbury isn't import inventory * * *.*'' (Emphasis added.)

And, finally, in the entry of the board:

"From the testimony it is clear that the inventory of raw tea and green coffee beans located at Sunbury was used entirely for current operational needs and consisted of roughly a week's operating supply.

"The inventory in Columbus was *import* tea and coffee which had not lost its *import* status *except for that portion used for current operational needs.*'' (Emphasis added.)

From the record in this case, we cannot agree with appellant's conclusion that the Tax Commissioner had agreed to an assessment against 10% and 7% of the total inventory of tea and coffee, respectively, at both locations as an approximation of current operating needs. The letter, upon which appellant apparently bases its theory of agreement to ten and seven percent, specifically mentioned the

need for a breakdown of figures on tea and coffee *imports.* Since the Tax Commissioner never considered the Sunbury inventory as *import,* but rather wholly current operating need, the only *import* tea and coffee in question was plainly that at Columbus.

Appellant's third contention is that the board's entry is unreasonable and unlawful in that there was no probative evidence before the board to support its determination that 100% of Sunbury inventory was taxable.

This contention is based upon our decision in the case of *Orr Felt & Blanket Co.* v. *Schneider* (1965), 3 Ohio St. 2d 14, 209 N. E. 2d 150. In that case, we were called upon to decide *how much* of the taxpayer's imported inventory on hand was necessary to meet his current operational needs. At page 24, we said that "* * * the rule applied to the taxpayer should be that that amount of grease wool removed from the bonded warehouse and in inventory which is required to meet 'current operational needs' for the length of time it takes to secure an additional supply from the foreign source which the taxpayer has selected to supply its grease wool is taxable." This so-called re-order cycle test was not applied by the board in the instant case.

However, in *Orr Felt,* at page 21, we also stated:

"Neither the *Youngstown case* nor the *Continental case* decided the question presented by the case before this court.

"In the *Continental case* all the coffee * * * [was] necessary and irrevocably committed to meet the taxpayers' current operational needs."

It must be remembered that in the instant case only the Sunbury inventory is in question. The Tax Commissioner has urged an assessment against 100% of that inventory as he believes it is all current operating need and none of it retains its import standing. The board affirmed that contention, apparently because appellant's own witness testified that Sunbury stored only enough raw tea and green coffee beans to "run the plant for one week," and that as the supply at Sunbury was continuously depleted by

processing it was refilled from the Columbus facility by constant reordering. That testimony, elicited on cross-examination, was left unchallenged by appellant. It is reasonable to conclude therefrom that the total Sunbury inventory was necessary to supply the current operating needs of appellant's processing operation.

Thus, as in the case of *Continental Coffee Co.* v. *Bowers* (1963), 174 Ohio St. 435, 189 N. E. 2d 901, the board found as a matter of fact that all the inventory in question was committed to current operating needs and there was no need to determine how much of the *imported* inventory went to such needs, as there was in *Orr Felt*.

Appellant's fourth contention concerns the return year 1964, when it erroneously included its Columbus tea inventory in its Sunbury tea inventory. By its entry, the board affirmed a deficiency assessment against 10% of the Columbus inventory for 1964. It did not take notice of appellant's error in reporting the whole Columbus tea inventory in the Sunbury inventory for that year. The board decided that it was without jurisdiction to reduce the reported Sunbury inventory, since no deficiency assessment had been levied against it.

Appellee argues that the board was correct under *Willys-Overland Motors* v. *Evatt* (1943), 141 Ohio St. 402, 48 N. E. 2d 468. In the first paragraph of the syllabus in that case we said:

"* * * an appeal to the Board of Tax Appeals may be taken only from a deficiency assessment."

While appellant's better course might have been to file for a refund of the 1964 excess, rather than attempt to have this matter decided upon appeal, we conclude that by reason of the deficiency assessment made against the Columbus inventory for that same year, the board could properly settle the issue. The deficiency assessment against the Columbus inventory was inescapably tied to the reporting error in Sunbury; both were in regard to the same items. By the assesment of that deficiency, the board acquired jurisdiction to resolve the whole situation.

Finally, appellant questions certain valuations placed upon machinery and equipment at its Marysville facility. Upon consideration of the record, we determine that this matter was apparently unresolved below, at least to the extent that the final entry of the Board of Tax Appeals does not mention the disposition of the question. Since we have concluded that this cause must be remanded to the board, we expect that a clear-cut resolution of the issue will eventually be announced by the board.

Accordingly, the decision of the Board of Tax Appeals is affirmed, except to the extent that it decided that it was without jurisdiction to consider the 1964 reporting error, and with regard to the aforementioned valuation of appellant's machinery and equipment. For consideration of those questions, this cause is remanded to the board for further proceedings.

*Decision affirmed in part and reversed in part.*

O'NEILL, C. J., SCHNEIDER, HERBERT, KERNS, CORRIGAN, STERN and LEACH, JJ., concur.

KERNS, J., of the Second Appellate District, sitting for DUNCAN, J. JUDGE KERNS of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE DUNCAN and JUDGE KERNS did so and heard and considered this cause prior to the resignation of JUSTICE DUNCAN on November 28, 1971.