Matthias, J.
 

 Was the decision of the Board of Tax Appeals, approving the final determinations of the Tax Commissioner as to the true value of the shares in question, unreasonable or unlawful?
 

 The taxpayers in each appeal offered evidence before the Board of Tax Appeals, which they claim proved that the true value of the common shares of Clyde, having a par value of $0.10 per share, was as of 1945 but $0.38 per share, and as of 1946 but $0.58, and that the true value of the common shares of Artkraft, as of 1946, which had also a par value of $0.10' per share, was $0.39 per share.
 

 Testimony was offered which disclosed that the book value of Artkraft common was $0.39 per share on December 31,1945, and the earnings of Artkraft were less than $0.01 per share; that the book value of Clyde common as of Décember 31, 1944, was $0.37, and as of December 31, 1945, before the renegotiation of contracts, $0.82, and after renegotiation, $0.58; and that the
 
 *233
 
 ■earnings of the corporation for the year 1944 amounted to $0.058 per share, and for the year 1945, before renegotiation, $0.102 per share.
 

 Balance sheets and profit-and-loss statements for ■Clyde, for the year ending December 31, 1945 (both before and after renegotiation), and for Artkraft, for the year ending December 31, 1945, were admitted in ■evidence. A similar statement for Clyde, for the year ■ending December 31, 1944, was filed in this case, but the record does not disclose clearly that such statement was admitted in evidence. These statements substantiate the claims made as to the book value as of December 31, 1944, and December 31, 1945, respectively; and as of the latter date the statement of each corporation discloses substantial earned surplus exceeding the total common stock issued and outstanding.
 

 The evidence shows that the shares in these corporations are closely held; that as of the dates in question, 'in Artkraft,. four individuals held about 65 per cent •of the shares and only ten to fifteen per cent of the total issue was owned by the public; and that, in the ■case of Clyde, 87% per cent belonged to individuals holding large blocks of shares, who had control, and “the general public owned approximately 12% per cent.
 

 The record shows that in July 1944 Clyde offered 100,000 shares in the market at $0.75 per share; that Clyde common had once reached a high of $12, and “this stock was not listed on the exchanges; that in 'October 1945, 259,000 shares of Artkraft sold at $0.28 per share; and that at another time a block of 70,000 •shares sold at the price of $1.50 per share.
 

 The Tax Commissioner, in arriving at his valuations, •considered, but did not adopt, recorded bid-and-asked prices of these shares as of December 31, 1945 and 1946. These quotations do not disclose regular sales ■of this stock and were offered without evidence show
 
 *234
 
 ing that such quotations were generally accepted by the public as accurate or showing other qualifications-thereof as proper evidence.
 

 The taxpayers urge this evidence was incompetent and, therefore, their evidence being uncontradicted,, the action of the Board of Tax Appeals in affirming the orders of the Tax Commissioner was erroneous.
 

 In an appeal from an assessment based on an alleged erroneous valuation of intangible personal property,, the Board of Tax Appeals is required to consider the-entire evidence anew and arrive at its own valuation based on the evidence before it.
 

 Section 5611, General Code, provides in part as-follows:
 

 “Upon the filing of such notice of appeal the Tax Commissioner shall certify to the Board of Tax Appeals a transcript of the record of such proceedings-before him together with all evidence, documentary or otherwise, considered by him in connection therewith. #
 
 *
 
 * The Board of Tax Appeals may order the appeal to be heard upon the record and the evidence-certified to it by the Tax Commissioner, but upon application of any interested party shall order the hearing of additional evidence; and it may make, or cause-to be made, such investigation with respect to the appeal as it may deem proper. ’ ’
 

 Section 5611-1, General Code, provides in part as follows:
 

 “The decisions of the Board of Tax Appeals may affirm, reverse, vacate or modify the tax assessments,, valuations, determinations, findings, computations or orders complained of in the appeals or applications determined by it and its decisions shall become final and conclusive for the current year, unless reversed, vacated, or modified as in Section 5611-2 of the General Code of Ohio provided.”
 

 
 *235
 
 Broad investigational powers are vested in the Board •of Tax Appeals by Section 5611, General Code. Where, ■as a result of the board’s consideration of all the evidence before it, it affirms an assessment by the Tax Commissioner and an appeal is taken to this court from such affirmance, the court is governed by the provisions of Section 5611-2, General Code. That section provides:
 

 “If upon hearing and consideration of such record ■and evidence the Supreme Court is of the opinion that the decision of the Board of Tax Appeals appealed from is reasonable and lawful it shall affirm the same, but if the Supreme Court is of the opinion that such ■decision of the Board of Tax Appeals is unreasonable ■or unlawful, it shall reverse and vacate same or it may modify same and enter final judgment in accordance with such modification.”
 

 Concededly, the proper rule of valuation was adopted by the Board of Tax Appeals and is stated in its entry as follows:
 

 “Under our statutes and constitutional provision it is considered that ‘true value in money’ is not equivalent to market or book value. To repeat, it contemplates accuracy and is antagonistic to all that deviates therefrom. Market and book value are- not fixed ■criterions, but valuable elements to be considered in .arriving at ‘true value.’ Many things such as earnings, past and present, future dividend-earning power, future prospects, value of good will, management, financial soundness, closeness of ownership, quantities held, salai’ies paid, business policies, costs, obsolescence, tax burdens and interest charges, corporation reports, market reports of' which we will hereinafter have more to say, and a host of other matters establish true value.”
 

 There is no dispute in the evidence submitted and no controversy as to the rule of law applicable in valu
 
 *236
 
 ing these shares. The only question presented to this-court is whether the decision of the Board of Tax Appeals is unreasonable or unlawful. The evidence of •appellants, alone, as shown by the foregoing statement of facts, amply supported the finding of the Board! of Tax Appeals that the values fixed by the Tax Commissioner were not unreasonable or unlawful.
 

 The decision of the Board of Tax Appeals is-affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Hart, Zimmerman, Stewart,. Turner and Taet,
 
 33.,
 
 concur.