284

TELE-MEDIA CO. OF ADDIL, APPELLEE, *v.* LINDLEY, TAX
COMMR., APPELLANT.
TELE-MEDIA CO. OF LAKE ERIE, APPELLEE, *v.* LINDLEY,
TAX COMMR., APPELLANT.

(Nos. 81-1411 and 81-1412—Decided June 30, 1982.)

Messrs. *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* Mr. *John R. Previs,* Messrs. *Vorys, Sater, Seymour & Pease,* Mr. *Robert E. Leach* and Mr. *Kenneth D. Beck,* for appellees.

Mr. *William J. Brown,* attorney general, and Ms. *Barbara E. Vest,* for appellant.

CELEBREZZE, C. J.   The first question addressed is: Does the taxpayer's book value based upon the purchase price as allocated or the seller's depreciated book value[2] more accurately reflect the true value in money of the tangible personal property acquired?

The taxpayers contend that the seller's lower depreciated book value is the more accurate indication of true value. They claim that the allocation of the gross purchase price to the individual-acquired assets was done primarily for Federal Income Tax purposes and was not intended to reflect their fair market value. Therefore, taxpayers argue, this allocation is not determinative of the true value of the tangible personal property for purposes of assessing Ohio personal property tax.

R. C. 5711.18 mandates the manner in which the property is to be listed and valued. It provides, in pertinent part: "* * * In the case of personal property used in business, the book value thereof less book depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money. * * *"

The language clearly specifies that the book value and depreciation be listed. It requires that the depreciated book value shall be used as the true value unless the assessor determines otherwise. *Youngstown Sheet & Tube Co.* v. *Kosydar* (1975), 44 Ohio St. 2d 96.

---

[2] The taxpayers refer to the sellers' depreciated book value as the "historical cost."

"The language of R. C. 5711.18 is mandatory in nature. The book value shall be used unless the assessor determines otherwise. By so providing, the General Assembly clearly intended that only an assessor could place a value, other than the book value, on the property." *Heimerl* v. *Lindley* (1980), 63 Ohio St. 2d 309, 313 (Celebrezze, C. J., dissenting).

In the case *sub judice,* the Tax Commissioner found that the true value of the tangible personal property was to be taxpayer's book value based upon the purchase price as allocated. This is the proper indicator of true value, as mandated by the statute and as determined by the Tax Commissioner.

This conclusion is supported by our previous decision in *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129. *Conalco* concerned a determination of the true value of the acquired assets and involved an arm's-length sale for a lump-sum purchase price. Subsequently, the purchased assets were appraised and the purchase price was allocated to the real and personal property. The syllabus in that case states:

"1. The best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction. (*State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals,* 175 Ohio St. 410, approved and followed.)

"2. In valuing real property sold within three days of the tax lien date in an arm's-length transaction, the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale."

In the case *sub judice,* the sales were followed by allocations of the purchase price to the assets. The taxpayers do not dispute the fact that these were arm's-length transactions and that the allocations of the purchase prices were based upon replacement costs. Applying *Conalco,* the book value based upon the recent sale price, properly allocated, is the best evidence of true value. See, also, *Grabler Mfg. Co.* v. *Kosydar* (1975), 43 Ohio St. 2d 75.

Thus, according to the foregoing line of cases, a recent sale of the property is the best evidence of true value. In order to establish an alternate true value, the taxpayer has the burden of proving that the recent sale is not the best evidence

of true value and that another indicator is a more accurate representative of that value.

The taxpayers, in an attempt to utilize this method, relied upon expert testimony[3] concerning the customary practice, in the cable TV industry, of calculating the gross purchase price when acquiring a cable TV company. The expert testified that physical assets are taken into account, but that cash flow generation is the primary consideration in determining the gross purchase price.[4] However, the testimony was in general terms and failed to present any specific value for the assets.

It is the duty of this court to determine from the record if the board's decision is supported by any probative evidence. Expert testimony was the only evidence offered by the taxpayers; however, it was in general terms and does not support the board's decisions accepting the taxpayers' assertion that the seller's depreciated book value of the assets is conclusively their true value. Moreover, the board's decisions do not comply with previous decisions construing R. C. 5711.18 when there is a recent arm's-length sale and allocation of the sale price to the property. We find the decisions unlawful and unreasonable.

We hold that the best evidence of the "true value in money" of tangible personal property is the proper allocation of the purchase price of an actual, recent sale of the property in an arm's-length transaction.

The second question concerns the use of the "302 true value computation." This refers to the directive published by the Tax Commissioner for the purpose of promoting industry-wide uniformity in determining the true value of depreciable property used in business. The directive prescribes composite

---

[3] Robert E. Tudek, President of Tele-Media Corp. and its various subsidiaries and affiliates, gave the expert testimony.

[4] The taxpayers rely upon *Heimerl* v. *Lindley* (1980), 63 Ohio St. 2d 309, for using the seller's depreciated book value as the true value. In *Heimerl*, the court discussed *Grabler* and *Conalco, supra,* but found that they were not determinative because the taxpayer's allocation in *Heimerl* was an arbitrary apportionment. Furthermore, there was a disparity in values because the allocated value was almost three times the purchase price. Unlike *Heimerl*, in the case *sub judice*, there is not a disparity in values and the apportionment was based upon replacement cost and is, thus, not arbitrary. Therefore, *Heimerl* may be distinguished as this case follows the *Grabler* and *Conalco, supra,* line of cases.

annual depreciation allowances to be used in lieu of book depreciation. *Monsanto Co.* v. *Lindley* (1978), 56 Ohio St. 2d 59, 62. The annual depreciation rates prescribed in the directive vary according to the type of business or nature of the equipment. These rates are expressed as percentages representing the allowable reduction to be taken each year from the original cost of the property. According to the directive, the prescribed annual rates are to be used in conjunction with a modified straight line depreciation formula for calculating the reportable value of the depreciable property.

The "302" directive has been approved by this court as a practical, reasonable and lawful method and device to achieve uniform valuation of plant equipment in Ohio by prescribing annual depreciation rates in lieu of book depreciation. *PPG Industries* v. *Kosydar* (1981), 65 Ohio St. 2d 80, 83; *Wheeling Steel Corp.* v. *Evatt* (1944), 143 Ohio St. 71. However, this court has also recognized that the "302" annual depreciation allowances are only prima facie evidence for determining true value. *Harper Co.* v. *Peck* (1954), 161 Ohio St. 300, paragraph two of the syllabus. Thus, the "302" annual rates are to be used unless the taxpayer proves that a rigid application is inappropriate or whenever special or unusual circumstances or conditions exist. *Monsanto Co.,* supra; *PPG Industries,* supra, paragraph two of the syllabus.

The taxpayers argue that the "302" annual rates are unreasonable when applied to used equipment which is purchased as part of an on-going business. Once a taxpayer alleges that use of the "302" rates does not reflect the true value of personal property pursuant to R. C. 5711.18, it is incumbent upon the board to apply a two-prong test to determine if the use of the "302" rates is correct in the given case. *Towmotor Corp.* v. *Lindley* (1981), 66 Ohio St. 2d 53.

This test requires first that the board determine if special and unusual circumstances exist which conclusively indicate that the "302" computation is inappropriate. If such circumstances do not exist, then the board must determine if the rigid application of the "302" computation creates an unjust or unreasonable result. If so, it is inappropriate to use the "302" computation. *Alcoa* v. *Kosydar* (1978), 54 Ohio St. 2d 477, 481;

*Monsanto Co., supra,* at 62; *PPG Industries, supra,* paragraph two of the syllabus; *Towmotor Corp., supra,* at 54.

In this case, the board did not explain its reasons and merely stated that the record supports the taxpayers' contention that the "302" computation is unreasonable. Apparently, the board did not find circumstances existed which precluded the use of the "302" computation. Instead, the language of the board's decisions suggests that the board applied the second prong of the test and found that the result of using the "302" computation was unreasonable.

Although the board concluded that the "302" computation was not reasonable, it failed to indicate the proper rates to be used in determining true value. The board is required to arrive at its own valuation in an appeal from the valuation assessed by the Tax Commissioner. *Clark* v. *Glander* (1949), 151 Ohio St. 229, paragraph one of the syllabus. Therefore, it is necessary to remand the causes for determination of the appropriate allowances for depreciation.

*Decisions reversed*
*and causes remanded.*

LOCHER, C. BROWN and KRUPANSKY, JJ., concur.

W. BROWN, SWEENEY and HOLMES, JJ., dissent.