[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 297.]

CORPORATE EXCHANGE BUILDINGS IV & V, LIMITED PARTNERSHIP,
APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*, 1998-Ohio-382.]

*Taxation—Real property valuation of office buildings on two nonadjacent parcels where purchase price was not allocated at time of sale—Board of Tax Appeals may approve board of revision's valuation of each parcel, when.*

(No. 97-996—Submitted January 27, 1998—Decided July 1, 1998.)

APPEAL from the Board of Tax Appeals, No. 95-A-464.

———————————

{¶ 1} On February 25, 1994, Corporate Exchange Buildings IV & V, Limited Partnership ("Partnership"), appellant, filed a real estate valuation complaint for tax year 1993 with the Franklin County Board of Revision ("BOR") for parcel number 211627 located in Columbus, Ohio. The valuation of parcel number 211627 is the subject of this opinion. At the same time Partnership also filed a separate real estate valuation complaint for parcel number 183730. While the two parcels are in close proximity to each other, they are not adjacent and are taxed separately. In its complaint for parcel number 211627, Partnership requested that the true value of the property be reduced from the auditor's valuation of $11,100,000 to $8,244,700. For parcel number 183730, Partnership requested that the true value of the property be reduced from the auditor's value of $7,930,000 to $6,255,300. Partnership's claim for a reduction in true value was based on its recent purchase of the two parcels. In both cases the Board of Education of the Westerville City Schools filed a countercomplaint seeking an increase in value.

{¶ 2} Title to both parcels was conveyed to Partnership in a single deed dated November 4, 1993. The conveyance fee statement reported that the

consideration for the two parcels was $14,500,000. A four-story office building known as Corporate Exchange Building V is located on parcel number 211627, consisting of 5.103 acres. Corporate Exchange Building V, containing 130,008 net rentable square feet, was constructed in 1989. A three-story office building known as Corporate Exchange Building IV is located on parcel number 183730, consisting of 5.016 acres. Corporate Exchange Building IV, containing 90,891 net rentable square feet, was constructed in 1987. No provision was made in the purchase contract or elsewhere to allocate the purchase price between the two parcels.

{¶ 3} The BOR affirmed the auditor's assessment in both cases. Separate appeals for the two parcels were filed with the Board of Tax Appeals ("BTA"). By agreement of the parties, the evidence and testimony presented to the BTA for parcel number 211627 was stipulated as the testimony and evidence for parcel number 183730.

{¶ 4} At the BTA, Partnership presented two witnesses. Partnership's first witness, Michael Balakrishnan, is a Partnership limited partner and a vice-president of Partnership's general partner, Joseph Skilken Company. Balakrishnan described the negotiations that culminated in Partnership's purchase of the two parcels. Partnership's second witness, Stephen H. Falor, is a local broker, and testified about his involvement in the sale of the properties on behalf of the sellers. Neither witness testified about the allocation of the purchase price between the two parcels.

{¶ 5} After reviewing the evidence, the BTA found that Partnership "did not present sufficient competent and probative evidence to this Board to meet their burden of proof of establishing a value other than that found by the county board of revision." This conclusion was based on the BTA's finding that "no appraisal evidence or testimony was offered to support appellant's valuation."

{¶ 6} Partnership filed separate appeals with this court for each parcel. (See case No. 97-997 for parcel number 183730.)

{¶ 7} This cause is now before this court upon an appeal as of right.

---

*Wayne E. Petkovic*, for appellant.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Matthew H. Chafin*, Assistant Prosecuting Attorney, for appellees Franklin County Board of Revision and Franklin County Auditor.

*Teaford, Rich & Wheeler, Jeffrey A. Rich* and *Karol Cassell Fox*, for appellee Board of Education of the Westerville City Schools.

---

*Per Curiam*.

{¶ 8} Partnership contends that the BTA erred in not allocating the purchase price between the two parcels. We disagree.

{¶ 9} The amount that the Partnership paid for the two parcels containing Corporate Exchange Buildings IV and V is not in dispute. In addition, the BTA determined that the sale to Partnership was an arm's-length sale; presumably then, the sale price reflects true value. *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 24, 546 N.E.2d 932, 934. However, the arm's-length sale price was paid for two separate properties.

{¶ 10} The two parcels are not identical. While the amount of land contained in each parcel is about the same, the buildings located on the parcels are different in size and age. Partnership set forth an allocation of the purchase price in the complaints it filed with the BOR. However, as the appellant before the BTA, Partnership needed to show that its allocation of the purchase price between the two parcels represented the true value of each parcel. See *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 677 N.E.2d 1197.

{¶ 11} Partnership's two witnesses, however, testified only about their involvement with the negotiations that culminated in the purchase of the two

parcels. In addition, the voluminous amount of documents presented by Partnership related only to the negotiations, purchase, and transfer of the two parcels.

{¶ 12} After hearing this testimony and reviewing these documents, the BTA correctly refused to accept the allocation of the purchase price made by Partnership. The BTA concluded that it could find no basis to "justify reliance upon appellant's suggested valuation allocation."

{¶ 13} Partnership argues that the BTA had testimony before it to allocate the purchase price based on rentable square feet. Partnership quotes from the BTA's decision. That quote, however, was taken from the brief Partnership filed with the BTA. Partnership cites no source in the record for the statement.

{¶ 14} Moreover, the only reference in the BTA record as to how the allocation could be made is contained in the opening statement of counsel for Partnership. He stated that the purchase price was allocated based on square footage and that he "believe[d] there will be testimony that this is also a reasonable way in this type of property to apportion." However, statements of counsel are not evidence. In *State v. Green* (1998), 81 Ohio St.3d 100, 104, 689 N.E.2d 556, 559, we stated that a "statement of facts by a prosecutor does not constitute evidence." This premise is adopted in VI Wigmore, Evidence (Chadbourn Rev.1976) 349, Section 1806, wherein it is stated that in an argument to the jury by counsel, any representation of fact "must be based solely upon those matters of fact of which evidence has already been introduced or of which no evidence need ever be introduced because of the notoriety as judicially noticed facts."

{¶ 15} Partnership further contends that *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 20 O.O.3d 349, 422 N.E.2d 846, requires the BTA to allocate the purchase price. In *Youngstown*, the BTA adopted a total valuation for a steel production complex situated on approximately four hundred sixteen acres containing some two hundred major structures. The property consisted of fourteen individual parcels located in three

taxing districts. We required the BTA, on remand, to break down its aggregate valuation into individual parcel values before certifying its decision and order to the county auditor. The *Youngstown* record, however, contained opinions and documentation from multiple appraisers from each side on which the BTA could base an allocation of total value. Thus, in *Youngstown*, the BTA had before it evidence of value which it could use to allocate the total true value.

{¶ 16} In *Coventry Towers, Inc. v. Strongsville* (1985), 18 Ohio St.3d 120, 18 OBR 151, 480 N.E.2d 412, we acknowledged the authority of the BTA to exercise independent judgment in determining the true value of property. However, such independent judgment must be based upon the evidence presented to it. We have consistently required that the BTA's decisions be supported by sufficient probative evidence. *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257. Here, the BTA received no evidence on which it independently could allocate the purchase price.

{¶ 17} Partnership also cites *Zazworsky v. Licking Cty. Bd. of Revision* (1991), 61 Ohio St.3d 604, 575 N.E.2d 842, as a case where this court ordered the BTA to apply a sale price as true value. In *Zazworsky*, the taxpayer was required to purchase a parcel of real property containing a warehouse he did not want in order to acquire a sublease on a building he did want. He paid $100,000 for both the building and the sublease. The only question before the BTA was the value of the purchased warehouse.

{¶ 18} The BTA affirmed the board of revision's valuation of $184,500 for the purchased warehouse, stating that the sale occurred "under peculiar circumstances." We reversed and ordered the BTA to enter a valuation of $100,000, holding that no evidence supported the BTA's decision.

{¶ 19} *Zazworsky* differs from this case. Only one piece of real property was at issue in *Zazworsky*, and we did not need to allocate a purchase price between

two pieces of real property. Indeed, Zazworsky himself maintained that the true value of the purchased warehouse was $100,000.

{¶ 20} Since Partnership has failed to produce sufficient competent and probative evidence to meet its burden of proof and has not presented evidence to support an independent valuation by the BTA, the BTA may approve the board of revision's valuation. *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 49, 689 N.E.2d 22, 24.

{¶ 21} For all the foregoing reasons, the decision of the BTA is reasonable and lawful and it is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting**.

{¶ 22} Because I do not understand how the BTA can insist on taxing these two properties at a combined value of $19,030,000, while agreeing that the true value is $14,500,000, I must strongly dissent from the majority's affirmance of the BTA's decision. I would find the decision to be arbitrary, unreasonable, and patently unfair.

{¶ 23} A long line of cases in Ohio has held that a recent sale of property that is an arm's-length transaction is the best evidence of the "true value" of the property. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 327, 677 N.E.2d 1197, 1199; *Conalco v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722; *State ex rel. Park Investment Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 25 O.O.2d 432, 195 N.E.2d 908. Here, the BTA concluded that the sale of Corporate Exchange Buildings IV and V *was* an arm's-length transaction. The sole reason for the BTA's rejection of the valuation of Corporate Exchange Buildings IV and V

Limited Partnership ("Partnership") was the claimed failure of the Partnership to present an *appraisal* that allocated the purchase price between the two buildings. However, the BTA's position is not supported by the law. To grant Partnership's request for reduction in the tax valuation of the two buildings, the BTA needed only to confront the issue of allocating the single sale price, presumed to be the true value, between the two buildings. In fact, the BTA had a *duty* to allocate the sales price once the true value was established so as to reach a fair and consistent tax assessment.

{¶ 24} In *Conalco*, this court held, at the syllabus:

"1.  The best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction. (*State, ex rel. Park Investment Co., v. Bd. of Tax Appeals*, 175 Ohio St. 410 [25 O.O.2d 432, 195 N.E.2d 908], approved and followed.)

"2.  In valuing real property sold within three days of the tax lien date in an arm's-length transaction, the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and *not an appraisal ignoring the contemporaneous sale*." (Emphasis added.)

{¶ 25} The appellees totally misinterpret *Conalco*. In *Conalco*, the allocation issue was not between two pieces of property, but rather between real estate and other assets, such as accounts receivable, related to the same property. In that case, a sale of the property occurred two days after the tax valuation conducted by the appraiser for the county auditor. The BTA ignored the sale and relied only on the appraiser's value. No appraiser testified for the taxpayer Conalco on allocation of the purchase price. Rather, Conalco relied on accounting principles for allocation. In rejecting the BTA's position, the court stated:

"The board should have determined, under the specific facts of this case, whether [Conalco's] allocation resulted in a distorted valuation of the real property.

" * * * Apparently, the board adopted the fair market value appraisal made by appellee [county auditor], despite testimony by appellee's appraiser that he ignored the contemporaneous sale of the property.

" * * *

"The board's decision in the present case, accepting the appellee's appraisal, despite an arm's-length sale within close proximity to the tax lien date, and rejecting APB 16, thereby avoiding a determination upon [Conalco's] allocation of the purchase price, is unreasonable and unlawful." *Id*., 50 Ohio St.2d at 131-132, 4 O.O.3d at 310-311, 363 N.E.2d at 723-724.

{¶ 26} In a subsequent case, also misinterpreted by appellees, this court reaffirmed the best evidence rule of a recent sale:

"We hold that the best evidence of the 'true value in money' of tangible personal property is the proper allocation of the purchase price of an actual, recent sale of the property in an arm's-length transaction.

" * * *

" * * * The board is required to arrive at its own valuation in an appeal from the valuation assessed by the Tax Commissioner. *Clark v. Glander* (1949), 151 Ohio St. 229 [39 O.O. 56, 85 N.E.2d 291], paragraph one of the syllabus." *Tele-Media Co. v. Lindley* (1982), 70 Ohio St.2d 284, 287-289, 24 O.O.3d 367, 369-370, 436 N.E.2d 1362, 1365.

{¶ 27} In *Tele-Media*, the taxpayer was seeking a valuation *lower* than the actual sale price. The court found that the book value, *properly allocated*, is the best evidence of true value. *Id.* at 286, 24 O.O.3d at 368-369, 436 N.E.2d at 1364. The court placed the burden of allocation on the BTA when a true value was known.

{¶ 28} I do not find *Elsag-Bailey, Inc. v. Lake Cty. Bd. of Revision* (1996), 74 Ohio St.3d 647, 660 N.E.2d 1184, to be on point. *Elsag-Bailey* dealt with a complicated transaction with two competing appraisals that recommended different

appraisal methods but involved no sale. *Elsag-Bailey* merely states that the BTA could look at both appraisals and make its *own* determination of the true value.

{¶ 29} In this case, the BTA did not fulfill its duty of properly allocating the true value. Instead, it arbitrarily clung to the appraised value and ignored the sale price, contrary to the mandate of *Conalco*. Had the property sold for more than the appraised value, the appellees certainly would have been the ones appealing and making the same arguments Partnership now makes.

{¶ 30} In fact, Partnership offered the BTA a reasonable, logical method of allocating the purchase price between the two buildings based upon the rentable square footage of each building. Evidence of the rentable space of each building was before the BTA in the numerous exhibits offered by Partnership related to the sale of the properties. No appraisal was necessary to substantiate the value of each building or the method of allocation in light of the recent sale. No expert testimony was necessary to explain or substantiate what amounted to a simple mathematical calculation. As in *Conalco*, the BTA needed only to apply an accounting principle to determine the allocation.

{¶ 31} The BTA made no determination that allocation of value between the buildings was not possible. Further, BTA made no factual finding that Partnership's proposed method of allocation was improper, unreasonable, or not based upon verifiable information. None of the appellees presented any evidence in rebuttal. No other method of allocation was even suggested. Instead, the BTA summarily rejected Partnership's proposed method of allocation of value without any legal or factual basis, citing only Partnership's failure to have "appraisal evidence or testimony."

{¶ 32} Yet the BTA concluded that Partnership did not justify its allocation method, and, therefore, the BTA affirmed the auditor's valuation of the properties. The auditor's assessment of value for both parcels totaled $19,030,000. The auditor assessed the value of Building IV at $7,930,000, approximately forty-two percent

of the combined values, and assessed the value of Building V at $11,100,000, approximately fifty-eight percent of the combined values.

{¶ 33} Partnership's allocated values closely mirrored those of the auditor. The true value, as evidenced by the recent sale, was $14,500,000 for both parcels. Partnership requested that a value of $6,255,300 be placed on Building IV, approximately forty-three percent of the combined sale price. Partnership requested that a value of $8,244,700 be placed on Building V, approximately fifty-seven percent of the combined sale price.

{¶ 34} If the BTA had reason not to adopt the Partnership's proposed allocation, the BTA had before it sufficient information about each building from which to derive its own allocation of the $14,500,000 sale price it already accepted as the true value. Exhibits revealed similarities about the buildings. They are in close proximity to each other within the same office park. Both are situated on five acres of land. They were built within a few years of each other. Building IV has three stories with 90,891 rentable square feet, with three hundred forty-one parking spaces and a ninety-six percent occupancy[1]; Building V has four stories with 130,008 rentable square feet, with four hundred fifty-two parking spaces and over ninety-five percent occupancy. Building construction was virtually identical. Commercial tenants were of the same quality. Both were Class A structures with similar rental ranges. The building had been owned and managed by the same partnership. These are non-fluctuating, descriptive factors upon which the BTA could have compared and contrasted the two buildings in order to reach its own independent allocation of the $14,500,000 value.

{¶ 35} The BTA's finding that the purchase of Corporate Exchange Buildings IV and V was an arm's-length transaction reinforces the presumption that

---

1. Occupancy of Building IV was reported as seventy-six percent in a March 1993 financial statement; however, sales information dated July 1993 reported occupancy at ninety-six percent.

the sale price of $14,500,000 was the true value for the two properties. The BTA's decision to affirm the auditor's separate assessments of value results in both properties being valued, for tax purposes, at $4,530,000 more than they were valued in an arm's-length transaction. I fail to see how this can be fair or just. Such a decision, without further justification, is inherently arbitrary, capricious, and unreasonable. The BTA had a duty in light of the unrefuted and voluminous evidence before it to fairly and justly allocate the true value between the two buildings. To arbitrarily ignore the purchase price and blindly adhere to the appraisal because the buildings are "independent" is grossly unfair and flies in the face of *Conalco*. If the BTA did not accept the Partnership's allocation, it could perform its own. Yet appellees offer no alternative. It did not matter a great deal if the allocation differed by some percentage, since the Partnership was the same taxpayer. But what the BTA could *not* do was totally ignore the $14,500,000 value it already recognized, refuse to allocate the price between the two buildings, and impose a value of $19,030,000, a $4,530,000 difference, because the taxpayer did not separately appraise the two buildings. An appraisal is not necessary in light of the best evidence before it which the law *required* the BTA to consider. I cannot condone such a patently outrageous result.

{¶ 36} I believe that Partnership met its burden by establishing the arm's-length nature of the sale transaction and by proposing a logical, reasonable, and verifiable method of allocating the sale price between the two buildings for tax purposes. The BTA arbitrarily refused to consider Partnership's allocation or any other allocation. Therefore, I would reverse the decision of the BTA and remand this matter to the BTA with instructions to determine a formula to allocate the $14,500,000 sale price between the two buildings.

PFEIFER, J., concurs in the foregoing dissenting opinion.

———————————