OPINION
On March 31, 1997, Cheryl S. Dritz filed a "complaint against the valuation of real property," naming as defendants the Franklin County Board of Revision ("BOR") and the Franklin County Auditor. Ms. Dritz's complaint sought a decrease in the auditor's 1996 valuation of her residential real estate located at 2635 Bexley Park Road (hereinafter the "subject property"), situated in the Bexley, Ohio city school taxing district. The stated reason for the requested decrease in value of the subject property was because of "sales of comparable properties."
The face of the form-complaint indicated that the property had been sold by and to other parties in June 1995 for $559,000. The auditor determined the property's true value to be $517,500 as of tax lien date January 1, 1996, resulting in a taxable value of $181,120. Ms. Dritz sought a decrease of the true value to $425,000, with a $148,745 taxable value.
The BOR conducted a hearing in July 1997. On December 31, 1997, the BOR notified Ms. Dritz of its decision to leave the auditor's $517,500 valuation unchanged.
Pursuant to R.C. 5717.01, Ms. Dritz then appealed the decision of the BOR to the Ohio Board of Tax Appeals ("BTA"). Following a June 1998 hearing, the BTA rendered a decision in November 1998 leaving intact the $517,500 valuation.
Ms. Dritz ("appellant") now appeals to this court, assigning four errors for our consideration:
 I. THE BOARD OF TAX APPEALS INCORRECTLY, UNREASONABLY AND UNLAWFULLY FOUND THAT THE APPELLANT FAILED TO ESTABLISH A TRUE VALUE OTHER THAN THAT FOUND BY THE BOARD OF REVISION.
 II. THE BOARD OF TAX APPEALS INCORRECTLY, UNREASONABLY AND UNLAWFULLY FAILED TO TAKE INTO ACCOUNT THE EVIDENCE OFFERED BY THE APPELLANT RELATIVE TO OTHER PROPERTIES IN THE COMMUNITY AND THEIR VALUATION BY THE FRANKLIN COUNY AUDITOR.
 III. THE BOARD OF TAX APPEALS INCORRECTLY, UNREASONABLY AND UNLAWFULLY DISREGARDED THE TESTIMONY OF THE APPELLANT'S EXPERT RELATIVE TO THE TRUE VALUE OF THE APPELLANT'S PERSONAL RESIDENCE.
 IV. THE BOARD OF TAX APPEALS INCORRECTLY, UNREASONABLY AND UNLAWFULLY DISREGARDED THE SPECIAL CIRCUMSTANCES OF THE ARM'S LENGTH TRANSACTION.
Because the assignments of error are interrelated, we address them jointly. Considered collectively, the arguments contend that the BTA erred in finding that appellant failed to demonstrate her entitlement to a reduction in the valuation of her property.
In reviewing the proceedings below, this court is constrained by an abuse of discretion standard. Therefore, we must afford substantial deference to the BTA's exercise of its broad discretion in determining the weight to be assigned to the evidence and the credibility of witnesses. WJJK Investmentsv. Licking Cty. Bd. of Revision (1996), 76 Ohio St.3d 29; Shaker Square Co.v. Bd. of Revision (1960), 170 Ohio St. 369. As the trier of fact, the BTA, in its wide discretion, "may accept all, part, or none of the testimony of a witness." Simmons v. Cuyahoga Cty. Bd. of Revision (1998),81 Ohio St.3d 47, 48, citing R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision
(1988), 38 Ohio St.3d 198.
In Cardinal Fed. S. L. Assn. v. Cuyahoga Cty. Bd. of Revision (1975),44 Ohio St.2d 13, paragraph four of the syllabus, the Supreme Court of Ohio held:
 The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful.
Pursuant to R.C. 5713.03, in an "arm's length" transaction, the sale price of property is the "best evidence" of its true value for tax purposes. See, also, Zazworsky v. Licking Cty. Bd. of Revision (1991),61 Ohio St.3d 604; Walters v. Knox Cty. Bd. of Revision (1989),47 Ohio St.3d 23. The parties do not dispute that this sale was an arm's length transaction, with all parties involved acting in their own respective best interests.
It is well-settled that a party asserting a right to a decrease bears the burden of proving that the sale price does not reflect the true value of the property. That burden includes the burden to come forward with evidence which supports its right to such a decrease. Cleveland Bd. of Edn. v.Cuyahoga Cty. Bd. of Revision (1994), 68 Ohio St.3d 336; Mentor ExemptedVillage Bd. of Edn. v. Lake Cty. Bd. of Revision (1988), 37 Ohio St.3d 318;Tele-Media Co. v. Lindley (1982), 70 Ohio St.2d 284.
We turn now to the evidence adduced at the hearings below before the BOR and BTA. Two witnesses were presented by appellant: Stanley Dritz, husband and legal counsel to appellant; and Gary Huntley, a real estate appraiser hired to prepare a report regarding the subject property's value.
According to Mr. Dritz, in 1994, the original house located on the property was razed and a new home was erected by its then-owner, Lamar Builders. In June 1995, the property was transferred to Molly Ruben and Laurence Ruben, the latter of whom was the president of Lamar Builders, for $559,000. In September 1995, appellant purchased the property for $525,000.
Mr. Dritz testified that the $525,000 purchase price for the subject property was obtained by a "swap" or "trade." This arrangement required appellant to sell another parcel of property owned by her (the "Bryden Road" property) to the Rubens for $325,000. In addition, appellant paid to the Rubens an additional $200,000, thus totaling $525,000.
At the hearing before the BTA, appellant introduced testimony from Gary Huntley, a real estate appraiser hired to prepare a report regarding the subject property's true value. Mr. Huntley used a sales comparison analysis, testifying about "comparable" properties that have sold and/or been valued at lower values than appellant's property. The three properties were sold for $385,000, $360,000, and $346,500, respectively. Based upon those "comparable" sales, Mr. Huntley appraised the true value or fair market value at $405,000.
Significantly, and as noted by the BTA in its decision, the appraisal contains a "Limited Appraisal/Restricted Report" clause which indicates that "the report is a departure" from the Uniform Standards of Professional Appraisal Practice "because the cost approach was not processed." According to the report, the reason for this deviation from the norm, conducting only a sales comparison approach, was "at the request of the client."
Counsel for the county entities counters that the cost approach was the most reliable appraisal method here. The county introduced into evidence a page from a Multiple Listing Service which had listed the subject property as a "LUXURY HOME IN PREMIER LOCATION," with a sale price of $559,000 as of April 1995.
The BTA agreed that a cost approach would have been prudent and expressly concluded that appellant's appraisal "is not entitled to any weight in establishing true value." In questioning the reliability of the "suspect" appraisal, the BTA explained at length:
 * * * [T]he appraiser did not utilize the cost approach to estimate the value of the subject property due to appellant's counsel's request. * * * The significance of a cost analysis is heightened by the fact that the seller was a principal officer of the builder and could have provided actual cost figures for the appraiser to consider. The appraiser also testified that it is difficult to locate newly constructed properties in established communities like Bexley[.] It would appear that the cost approach would have been an important means by which to estimate value. See, generally, The Appraisal of Real Estate (11th Ed., 1996), 338-339. Had this additional method been performed, it would have provided a valuable check on the method used, i.e., the sales comparison, or market data, approach.
 The singular method which was employed is also suspect given the properties to which the subject was compared and the absence of adjustments which would appear necessary. For example, two of the three properties had improvements which were seventy-six and sixty-seven years old, yet no adjustments were made to account for the subject's less than two year old improvements. Further, the appraiser indicated that he did not inspect the interiors of any of the properties with which the subject was compared and that the information he relied upon was simply gathered from published sales reports. We therefore find that the appraisal is not entitled to any weight in establishing true value. (Decision and Order, 7-8.)
The BTA did not abuse its discretion in concluding that appellant failed to satisfy her burden of establishing a true value which differed from that found by the BOR. In its comprehensive decision, the BTA reasonably rejected as unreliable the so-called "comparables" provided by appellant's appraiser. In fact, the BTA's discretion in evaluating the state of the evidence is such that where it rejects the evidence presented to it as "not being competent and probative, or not credible, and there is no evidence from which the BTA can independently determine value, it may approve the [BOR]'s valuation" even if the BOR presents no evidence. Simmons, supra, at 49.
For the foregoing reasons, the assignments of errors are overruled.
Having overruled the assignments of error, the judgment of the BTA is affirmed.
Judgment affirmed.
BOWMAN and PETREE, JJ., concur.