[Cite as *HSBC Bank U.S.A., Natl. Assn. v. Gill*, 2019-Ohio-2814.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, | : | APPEAL NO. C-180404<br>TRIAL NO. A-1201799 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| KULWINDER GILL, | : | |
| and | : | |
| AMARJIT S. GILL, | : | |
| Defendants-Appellants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 10, 2019

*Buchanan Ingersoll & Rooney PC* and *Timothy P. Palmer,* for Plaintiff-Appellee,

*Gary F. Franke,* for Defendants-Appellants.

**BERGERON, Judge.**

{¶1}   While the defendants-appellants challenge sundry aspects of the damage award in this case, at bottom, their appeal turns on the question of whether the plaintiff-appellee laid a proper foundation for the evidence establishing its award.  The trial court admitted the evidence in question under the business-records exception to the hearsay rule, and our review of the record confirms the propriety of this decision.  We therefore affirm the judgment of the trial court.

I.

{¶2}   The history of this case traces to a foreclosure action on a commercial loan for a hotel against two sets of guarantors; defendants Amarjit S. and Kulwinder Gill are one set of the guarantors.  The underlying note was in the principal amount of $1,333,000 to Business Loan Center, LLC, f.k.a. Business Loan Center Inc. ("BLC"), which plaintiff-appellee HSBC Bank USA, National Association ("HSBC") eventually acquired via assignment.  Upon default, HSBC received $1,090,018.28 from a short sale of the collateral property in 2007.

{¶3}   HSBC then commenced a collection action against the guarantors to collect the balance owed on the loan, including interest and fees.  In 2015, however, the Gills exited from this litigation after reaching a tentative settlement with HSBC pending Small Business Administration ("SBA") approval.  HSBC proceeded to trial against the other guarantors, ultimately receiving a judgment in the amount of $461,477.44 plus interest against the other set of guarantors, with whom it settled for a $400,002 payment on the deficiency.

{¶4}   The tentative settlement between the Gills and HSBC, however, ultimately collapsed when the SBA did not approve the deal.  This prompted HSBC to sue the Gills to collect the balance of the deficiency from them, and when the dust

settled from this litigation, the trial court entered a judgment against the Gills in the amount of $145,274.94.

{¶5} With no serious dispute about their liability or enforceability of their guaranty, the Gills' arguments revolve around the amount and propriety of the damages award. The Gills frame a single assignment of error challenging the damages award, with multiple separate issues for review. Ultimately, the predicate for most of these issues concerns the admissibility of the relevant evidence, so we begin our analysis there.

II.

A.

{¶1} Before undertaking the substantive analysis, we pause for a moment at the standard of review, which appears to be a bit of a quagmire. Generally, "the trial court enjoys broad discretion in admitting or excluding evidence. An appellate court will not disturb the exercise of that discretion absent a showing that the [party against whom the evidence was admitted] has suffered material prejudice." (Citations omitted.) *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). While that proposition is familiar enough, when it comes to hearsay and its exceptions, Ohio courts have proven less-than-precise at times in terms of the standard of review, generating conflicting precedent. We see this even in our own district. Several years ago, in *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App.3d 82, 100, 721 N.E.2d 1068 (1st Dist.1999), this court held that the abuse-of-discretion standard is not appropriate relative to the admissibility of hearsay in the civil context. We squarely addressed this question and determined that deferential review should not govern because the admissibility of hearsay is not optional: " 'This rule does not provide the trial court with discretion to admit hearsay; rather, the rule

mandates its exclusion unless the exceptions found at Evid.R. 803, 804, or 807 apply.' " *Id.* at 100, quoting *Smith v. Seitz*, 4th Dist. Vinton No. 97CA515, 1998 WL 393880, *1 (July 9, 1998). Given the distinction between hearsay and garden-variety evidentiary decisions, we accordingly held: " 'Unlike those evidentiary rulings which relate to matters either explicitly or implicitly within the trial court's discretion, the admissibility of hearsay should be reviewed with little deference to the trial court's decision.' " *Id.*, quoting *Smith* at *1.

{¶2} Since that time, a split developed amongst the appellate districts between those that view the admission of hearsay as question of law for which de novo review is appropriate, and those that treat hearsay as falling within the general abuse-of-discretion standard. *Compare, e.g., John Soliday Fin. Group, L.L.C. v. Pittenger*, 190 Ohio App.3d 145, 2010-Ohio-4861, 940 N.E.2d 1035, ¶ 28 (5th Dist.) ("[W]hile the trial court has discretion to admit or exclude relevant evidence, it has no discretion to admit hearsay. * * * Thus, we review de novo the trial court's decision * * *."); *Monroe v. Steen*, 9th Dist. Summit No. 24342, 2009-Ohio-5163, ¶ 11 ("Whether evidence is admissible because it falls within an exception to the hearsay rule is a question of law, thus, our review is *de novo*."); *with Abrams v. Abrams*, 2017-Ohio-4319, 92 N.E.3d 368, ¶ 31 (2d Dist.) ("We review rulings regarding hearsay under an abuse-of-discretion standard."); *Bishop v. Munson Transp., Inc.*, 109 Ohio App.3d 573, 579, 672 N.E.2d 749 (7th Dist.1996) ("The decision to admit a business record into evidence pursuant to Evid.R. 803(6) * * * will not be disturbed on appeal absent a clear showing of an abuse of discretion.").

{¶3} In recent years, without discussion of *Meyers* or of this split of authority, this court began applying an abuse-of-discretion standard of review to hearsay and hearsay exception determinations by invoking this quote from *State v.*

4

*Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001): "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *See State v. Barnes*, 1st Dist. Hamilton Nos. C-170355 and C-170356, 2018-Ohio-3894, ¶ 4 (citing *Issa* and applying to hearsay determination); *State v. Beck*, 2016-Ohio-8122, 75 N.E.3d 899, ¶ 27-28 (1st Dist.) (quoting *Issa* and applying to business-records exception). But the problem with this is that in *Issa*, the Supreme Court discussed the standard of review in the context of *relevance* and not hearsay. So we appropriated the general relevance standard for hearsay, at odds with our analysis in *Meyers*.

{¶4} But we appear to be in good company here, because the Supreme Court of Ohio did the exact same thing. Recently, in *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, the court held: "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion." The case that *McKelton* cited for that proposition (*State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967)), however, like *Issa*, addressed a relevance determination—suggesting that the court did not thoroughly consider the policy issues raised by the appellate district split (nor did the court acknowledge the split). *See State v. Fambro*, 11th Dist. Trumbull No. 2016-T-0063, 2017-Ohio-5646, ¶ 74 (Cannon, J., concurring) (arguing that *McKelton* should not be read to apply discretionary review to hearsay since it relied on a relevance case).

{¶5} Even if *McKelton* stands on a shaky foundation, other Supreme Court decisions have applied the abuse-of-discretion standard of review to hearsay determinations in both the civil and criminal context. *See Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 20-22; *State v.*

*Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992). To be fair, none of these cases actually engage in an analysis between the two dueling standards of review, and that debate is one that should probably warrant some attention by the high court. Until that time, however, we consider ourselves bound to follow the extant guidance from the Supreme Court, and we clarify that hearsay determinations are reviewed for an abuse of discretion.

## B.

{¶6} With the standard of review in mind, we turn to the substance of the hearsay objection at hand. Hearsay may be admissible if subject to an enumerated exception—here, the business-records exception found in Evid.R. 803(6). This excepts "Records of Regularly Conducted Activity" from the general prohibition against hearsay, which covers:

> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make [such records], all as shown by the testimony of the custodian or other qualified witness * * *.

*Id.* Put differently, the proponent must lay a foundation "demonstrating that the [record] was prepared at or near the time of the recorded event or that it was the regular custom to make such a [record]." *Meyers*, 131 Ohio App.3d 82 at 101, 721 N.E.2d 106. *See Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 10 (1st Dist.) (for purposes of Evid.R. 803(6), the proponent must show that "(i) the record [was] regularly made in a regularly conducted activity; (ii)

the contents * * * [were] entered or transmitted by a person with knowledge of the act, event, or condition recorded therein; and (iii) the act, event, or condition [was] recorded at or near the time of the transaction.").

{¶7} The lone witness to testify at trial was Susan Branch, and the Gills focus their attack on her, insisting that she lacked the competence to testify as to damages and could not properly authenticate pertinent documents. Ms. Branch testified that she was a licensed attorney, and a vice president and asset manager in the Special Services Department at Ciena Capital, LLC. She testified that she was also an officer with BLC, a subsidiary of Ciena Capital and the entity that originated the loan in issue. BLC (for which Ciena Capital is the parent company) assigned the loan to a pool; the pool was then sold and put into a trust for which HSBC ultimately became the trustee. She explained that Ciena's Special Services Department handles defaulted loans and described her role with respect to the loan in issue as that of an administrator and a day-to-day manager. She had access to the loan transcript, accounting, payoff statements, and loan file.

{¶8} Exhibit 12 emerges as perhaps the key document in this case because it is a loan history, which captures the loan payoff statement and transcript—including all payments made during the life of the loan, how the payments were applied, any BLC advanced expenses, and fees. HSBC's counsel, after establishing Ms. Branch's general credentials, laid a foundation for the admission of Exhibit 12 on her redirect examination:

> Q. Now, with regard to the payoff, the loan history in Exhibit 12, can you tell the Court what department at BLC prepares the accounting statements or the history statements and payoff statements?

7

A.     That's the loan accounting department.  Asset managers need loan payoff statements for motions in litigation.  And so asset manager directs the – sends a request to the loan accounting department and they use the software to – that tracks all the payments and fees to generate the payoff statement.

Q.     Okay.  Now, the payments and fees that get generated on the payoff statement and the loan history, can you tell the Court how the transactions are entered into the system in the first place?  Are they done contemporaneously as things happen?

A.     So when a payment is received, usually between 24, 48 hours, it's entered into a system called Loan Manager.

Q.     And do the people at BLC who enter the information, are they under an obligation to record the information accurately?

A.     Yes, they are.

Q.     And are they under an obligation to record the information timely?

A.     Yes.

{¶9}     We find this testimony sufficient to lay a proper foundation to admit the loan history upon which the trial court based its damages determination.  Ms. Branch worked for BLC's parent company, served as an officer of BLC, and was familiar with the Loan Manager system used to create the loan history, knew which department generated it, and relied on its contents in her role as the administrator and day-to-day manager of the loan in issue.  She established that the employees of BLC entering the loan information were under an obligation to do so regularly, timely, and accurately.  Authentication for purposes of the business-records

8

exception " 'does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document.' " *Jefferson v. CareWorks of Ohio, Ltd.*, 193 Ohio App.3d 615, 2011-Ohio-1940, 953 N.E.2d 353, ¶ 11 (10th Dist.), quoting *State v. Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, 795 N.E.2d 77, ¶ 60 (10th Dist.). "[A] court may admit a document as a business record even when the proffering party is not the maker of the document, if the other requirements of Evid.R. 803(6) are met and the circumstances suggest that the record is trustworthy. * * * Trustworthiness of a record is suggested by the profferer's incorporation into its own records and reliance on it." (Citations omitted.) *U.S. Bank, N.A. v. Christmas*, 2d Dist. Montgomery No. 26695, 2016-Ohio-236, ¶ 18, *vacated on other grounds*, 146 Ohio St.3d 1468, 2016-Ohio-5108, 54 N.E.3d 1267. And the Gills have done nothing to cast doubt on the trustworthiness of this document. Consistent with Evid.R. 803(6) and the above authority, we hold that the trial court did not abuse its discretion in admitting the loan history in Exhibit 12 (or the related testimony of Ms. Branch).

{¶10} Having determined that the evidence establishing HSBC's damages was properly admitted, it fell to the Gills to present contrary evidence, which they did not do. Their effort to poke holes in HSBC's evidence thus comes up short in the absence of any contrary evidence. For instance, while they quibble with the calculation of interest (claiming improper compounding), they point to no evidence substantiating that assertion. Nor did they cross-examine Ms. Branch on this point in an effort to establish an inappropriate rate.[1] It is incumbent upon a party to

---

[1] The Gills take issue with the fact that HSBC "charged 11% despite the loan contract rate that called for the rate to be prime plus 2.75%." The note does set the interest rate at prime plus 2.75 percent. The Gills do not identify the applicable prime rate. HSBC counters that the prime rate as of the default was 8.25 percent, which would explain the 11 percent.

introduce contrary evidence into the record or risk being saddled with the evidence that they do not like. Therefore, we see nothing in the record to disturb the trial court's upholding of HSBC's calculations.

C.

{¶11} The remaining issues raised by the Gills are easily dismissed. They cite an outdated version of Civ.R. 54(C) for the proposition that a plaintiff is limited to the sum claimed in the complaint (the ad damnum clause) absent amendment prior to trial. The current version of the rule dispels this concern: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, **even if the party has not demanded the relief in the pleadings**." Civ.R. 54(C). (Emphasis added.) The Gills fail to respond to the current version of the rule, for good reason.

{¶12} The Gills next assert that damages should have been capped at the amount awarded against the other guarantors ($461,477.44) less the proceeds collected from those other guarantors ($400,002.00), or $61,475.44 plus statutory interest of $14,033.66 (calculated at the postjudgment rate of 3 percent for 2015 and 2016 and 4 percent for 2017). While no one disputes that the Gills should receive credit for payments made by other guarantors (which the trial court ensured), we see several flaws in their math exercise here. The Gills declined to participate in the prior proceeding against the other guarantors, and thus they cannot now try to reap the benefits of that. For instance, they invite us to impose the (much lower) Ohio postjudgment interest rate rather than the prevailing rate under their guaranty. But they cite no authority for the notion that nonparties can benefit from the postjudgment interest rate when they were not parties to the underlying judgment. The plain language of R.C. 1343.03(B) militates against that interpretation,

describing postjudgment interest in terms of it being in effect after a "judgment, decree, or order for the payment of money rendered in a civil action based on * * * a contract * * *." There is no reason to conclude that nonparties to a judgment, decree, or order would be bound by this statute. The Gills were liable to HSBC on an independent guaranty, and we are not persuaded that they are entitled to enjoy the reduced rate of interest tied to a separate judgment.

{¶13} Charging a failure to mitigate damages, the Gills also take issue with HSBC accepting a settlement of less than the full amount of the judgment from the other guarantors. In addition to being facially untenable (the Gills benefitted from payment of any part of the remaining deficiency from another party), this proposition also lacks any supporting authority. Moreover, to the extent that it would be applicable in this context, "[m]itigation is an affirmative defense in Ohio." *Young v. Frank's Nursey & Crafts, Inc.*, 58 Ohio St.3d 242, 244, 569 N.E.2d 1034 (1991). The Gills did not present any evidence demonstrating HSBC's failure to take reasonable affirmative action to mitigate damages. "[S]tatements of counsel are not evidence[,]" and the Gills's counsel's statements comprise the entirety of this argument. *Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299, 695 N.E.2d 743 (1998). It appears to us that HSBC diligently sold the underlying property and pursued collection actions against the other guarantors first. The Gills were the final stop in that journey, and they benefited from these other efforts.

{¶14} As a last ditch effort to set aside this judgment, the Gills turn to promissory estoppel—in particular, they argue that they dismissed cross-claims against the other guarantors on the belief that they had a settlement with HSBC. The Gills' counsel argues that they relied on the settlement, but the record is barren as to

any evidence to that effect. *See Corporate Exchange Bldgs. IV & V, L.P.* The Gills characterize Ms. Branch's testimony as conclusive that SBA approval was not actually required to complete the settlement. In fact, however, she testified on cross-examination that she only had authority to resolve a defaulted loan if it is given to her by the people that own the loan, and that they needed SBA approval "if [they] were] not going to get the full principal back." The principal on this loan was not satisfied until August 2017, well after the Gills tentatively settled and released their cross-claims in 2015. The record lacks any evidence that the Gills relied on the tentative settlement in releasing their cross-claims; even if there were, the evidence presently within the four corners of the record suggests that any such reliance may not have been reasonable given the tentative nature of the settlement.

### III.

{¶15} Upon consideration of the issues raised by the Gills, we find that none demonstrates a valid reason to reverse the judgment below. Accordingly, their sole assignment of error is overruled, and we affirm the trial court's judgment.

*Judgment affirmed.*

**ZAYAS, P. J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.