[Cite as *Abrams v. Abrams*, 2017-Ohio-4319.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

LAVONNE ABRAMS                               :
                                             :
        *Plaintiff-Appellee*                 :     Appellate Case No. 27345
                                             :
v.                                           :     Trial Court Case No. 2002-DR-1901
                                             :
RODNEY C. ABRAMS                             :     (Appeal from Domestic Relations
                                             :     Court)
        *Defendant-Appellant*                :
                                             :

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of June, 2017.

. . . . . . . . . . .

CAROL J. HOLM, Atty. Reg. No. 0014613, 130 West Second Street, Suite 1010, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JEFFREY D. SLYMAN, Atty. Reg. No. 0010098, 211 Kenbrook Drive, Suite 5, Vandalia, Ohio 45377
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Rodney C. Abrams, appeals from the judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, overruling in part and sustaining in part his objections to the magistrate's decision that denied his motion to show cause and motion to modify child support. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} Rodney and Lavonne Abrams (hereinafter "Rodney" and "Lavonne") were married on April 1, 1995. One daughter, D.J.A., was born as issue of their marriage in 1997. After almost ten years of marriage, the parties were granted a Final Judgment and Decree of Divorce on December 30, 2004.

{¶ 3} Article IV of the divorce decree ordered Rodney to pay $666 per month in child support for D.J.A. The decree noted that D.J.A. "may be a Castle child and the parties agree that child support shall continue until such time as [D.J.A.] is able to live independently, if ever."[1] Judgment Entry and Decree of Divorce (Dec. 30, 2004), Montgomery County Domestic Relations Court Case No. 2002-DR-1901, Docket No. 49, Article IV, p. 5.

{¶ 4} Article XIII of the divorce decree further ordered Rodney to quitclaim the parties' marital residence located in Moraine, Ohio, to Lavonne within seven days of the

---

[1] The phrase "Castle child," means that the child "has a mental or physical disability, attained before the age of majority, that may extend the parents' duty to support her beyond the age of majority." *Elam v. Elam*, 2d Dist. Montgomery No. 25326, 2013-Ohio-957, ¶ 4, citing *Castle v. Castle*, 15 Ohio St.3d 279, 473 N.E.2d 803 (1984).

decree being filed. Under the same article, the decree ordered Lavonne to refinance the residence in her own name within one year from the date of the decree, or the residence would immediately be listed for sale with Lavonne to receive the proceeds or costs of said sale. Lavonne has resided at the marital residence with D.J.A. at all times since the divorce.

{¶ 5} Eleven years after the divorce, on March 15, 2016, Rodney filed a motion to modify the child support payment ordered by the divorce decree for the reason that D.J.A. had begun receiving social security disability benefits in the amount of $488.67 per month as of December 2015. On May 2, 2016, Rodney also filed a motion to show cause, in which he moved the trial court for an order requiring Lavonne to appear and show cause as to why she should not be held in contempt of court for failing to refinance the marital residence in her name as required by the divorce decree.

{¶ 6} A hearing on both of Rodney's motions was held before a magistrate on June 22, 2016. At the hearing, the magistrate heard testimony and received exhibits from Rodney and Lavonne, both of whom were represented by counsel. Rodney's exhibits included his and Lavonne's tax returns from 2013, 2014, and 2015. Lavonne's exhibits included: (1) the promissory note for the marital residence; (2) a quitclaim deed signed by Rodney transferring the marital residence to Lavonne on November 4, 2015; (3) an October 16, 2015 correspondence from Evolve Bank & Trust regarding an application for a home loan; (4) a June 2, 2016 Housing Source application for foreclosure intervention assistance; and (5) three of Lavonne's pay stubs from March and April 2016.

{¶ 7} During the hearing, Rodney objected to the magistrate allowing Lavonne to testify regarding the correspondence from Evolve Bank & Trust and the Housing Source

application (marked as Plaintiff's Exhibit Nos. 3 and 4) on grounds that the documents constituted inadmissible hearsay. Specifically, Rodney claimed that the documents were business records that required authentication by a records custodian, which Lavonne failed to provide.

**{¶ 8}** The magistrate overruled Rodney's objections to Plaintiff's Exhibit Nos. 3 and 4, indicating that the exhibits would be admitted "for what they are worth." Hearing Trans. (June 22, 2016), p. 18, 42. The magistrate allowed Lavonne to reference her credit report in the correspondence from Evolve Bank & Trust (Plaintiff's Exhibit No. 3) and permitted her to read into the record a hardship statement that she drafted and signed on the Housing Source application (Plaintiff's Exhibit 4). However, Lavonne did not otherwise testify regarding the contents of Plaintiff's Exhibit Nos. 3 and 4, and the magistrate did not permit Lavonne to explain what the exhibits showed. *See id.* at 17-18.

**{¶ 9}** Following the hearing, on July 22, 2016, the magistrate issued a written decision overruling both Rodney's motion to show cause and his motion to modify child support. With respect to the motion to show cause, the magistrate found that Rodney failed to establish by clear and convincing evidence that Lavonne was in contempt for failing to abide by the refinance provision in the divorce decree. The magistrate came to this conclusion because Rodney failed to quitclaim the marital real estate to Lavonne in a timely manner, and because Lavonne proved her inability to comply with the refinancing order.

**{¶ 10}** With respect to the motion to modify child support, the magistrate found no substantial change in circumstances warranting a modification given that the magistrate

calculated less than a ten percent deviation between the original child support order and the new child support computation using the income information provided by the parties at the hearing. The magistrate did not include D.J.A.'s social security disability benefits in the new computation based on the Supreme Court of Ohio's holding in *Paton v. Paton*, 91 Ohio St.3d 94, 742 N.E.2d 619 (2001) (holding that "[s]upplemental security income benefits received by a disabled child do not constitute a financial resource of the child pursuant to R.C. 3113.215(B)(3)(f)[2] for purposes of justifying a trial court's deviation from the basic child support schedule"). Accordingly, based on the magistrate's calculation of the parties' current gross incomes, the magistrate recommended the child support order of $666 remain unchanged.

{¶ 11} Rodney filed timely objections to the magistrate's decision on August 2, 2016, and supplemental objections on August 24, 2016. Lavonne filed a reply to Rodney's objections on September 6, 2016.

{¶ 12} In objecting to the magistrate's decision overruling his motion to show cause, Rodney argued that the magistrate's failure to find Lavonne in contempt of court was against the manifest weight of the evidence since the evidence established that Lavonne violated the divorce decree by failing to refinance the marital residence in her name within one year of the decree being filed. Rodney also argued that the magistrate incorrectly determined that the defense of inability to comply with the divorce decree applied to Lavonne given that said defense was based on information elicited from hearsay statements, i.e., Plaintiff's Exhibit Nos. 3 and 4.

{¶ 13} In objecting to the magistrate's decision overruling his motion to modify child

---

[2] R.C. 3113.215(B)(3)(f) is now codified as R.C. 3119.23(F).

support, Rodney challenged the magistrate's computation of child support. Specifically, Rodney contended that the magistrate's child support computation used Lavonne's incorrect gross income, claiming the figure used did not include Lavonne's overtime pay, 401K withdrawal, and rental income. Rodney also contended that the magistrate should have granted him a deviation from the basic child support worksheet computation due to D.J.A. receiving social security disability benefits.

{¶ 14} After conducting an independent review as required by Civ.R. 53, the trial court overruled Rodney's objections in part and sustained them in part. As for the motion to show cause, the trial court determined the magistrate correctly found that Lavonne had established the inability to comply with the refinance order in the divorce decree, and that the magistrate did not err in considering Plaintiff's Exhibit Nos. 3 and 4 given that the exhibits were not used for the truth of the matter asserted. However, the trial court sustained Rodney's objection in part given that the divorce decree required Lavonne to list the marital residence for sale if she had not refinanced within a year from the decree being filed. Since Lavonne had not yet refinanced the marital residence in her name, the trial court ordered the property to be immediately listed for sale pursuant to the terms of the divorce decree.

{¶ 15} With respect to the motion to modify child support, the trial court found that, based on the testimony and evidence in the record, the magistrate's child support computation was correct. Specifically, the trial court held that the magistrate did not use Lavonne's incorrect gross income or err in failing to grant Rodney a deviation from the basic child support worksheet computation as a result of D.J.A.'s social security disability benefits. Accordingly, the trial court ordered the child support to remain at $666.

{¶ 16} Rodney now appeals from the judgment of the trial court, raising two assignments of error for review.

**First Assignment of Error**

{¶ 17} Rodney's First Assignment of Error is as follows:

THE TRIAL COURT'S FAILURE TO FIND PLAINTIFF-APPELLEE IN CONTEMPT OF COURT FOR A CLEAR VIOLATION OF THE PARTIES' DIVORCE DECREE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} Under his First Assignment of Error, Rodney contends that the trial court erred in failing to find Lavonne in contempt of court for violating the parties' divorce decree. Rodney claims that this decision was an abuse of discretion and against the manifest weight of the evidence because Lavonne specifically testified that she had failed to refinance the marital real estate in her name as required by Article XIII of the divorce decree. Rodney also claims that in rendering its decision, the trial court improperly concluded that Plaintiff's Exhibit Nos. 3 and 4 were not hearsay.

{¶ 19} We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard. *DeWitt v. DeWitt*, 2d Dist. Darke No. 1386, 1996 WL 125920, *2 (Mar. 22, 1996), citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). (Other citations omitted.) " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable*." AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83,

482 N.E.2d 1248 (1985).   "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."   *Id.*   "A decision is unreasonable if there is no sound reasoning process that would support that decision."   *Id.*

**{¶ 20}** "A person may be found in contempt of court for '[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court[.] * * *' " *DeWitt* at *2, quoting R.C. 2705.02(A).   " 'A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order.' "   *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4.   The movant must establish this by clear and convincing evidence.   (Citation omitted.)   *Id.*

**{¶ 21}** "Once the movant has put forward a prima facie case, the burden falls to the defendant to prove his inability to comply with the order."   *Dewitt* at *2, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984). (Other citations omitted.)   " ' "As a general rule, the inability of the contemnor to comply with a judgment or order, without fault on the contemnor's part, is a good defense in a contempt proceeding for disobedience of the order." ' "   *Bostick v. Bostick*, 2d Dist. Champaign No. 2015-CA-13, 2016-Ohio-3354, ¶ 10, quoting *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 35, quoting 17 Ohio Jurisprudence 3d, Contempt, Section 62.

**{¶ 22}** " ' "[A] person who seeks to satisfy the court that his or her failure to obey an order or judgment was entirely due to the person's inability to render obedience carries the burden of establishing that fact." ' "   *Id.*   An unsubstantiated claim of financial

difficulties is insufficient to establish a person's inability to comply with a court order. (Citation omitted.) *Dewitt,* 2d Dist. Darke No. 1386, 1996 WL 125920 at *2. *Accord Wagshul* at ¶ 41. Rather the inability to comply must " 'be real and not self-imposed, nor due to fraud, sharp practices, or intentional avoidance.' " *DeWitt* at *2, quoting *Wagner v. Wagner*, 2d Dist. Montgomery No. 10115, 1987 WL 14271, *3 (July 10, 1987).

**{¶ 23}** As previously discussed, Rodney moved the trial court to find Lavonne in contempt of court for failing to abide by Article XIII of their divorce decree, which ordered Lavonne to refinance the loan on their marital residence in her name within a year of the divorce. There is no dispute that Article XIII of the divorce decree provides as follows:

> It is further ordered that Husband shall within seven days of the filing of this Decree Quitclaim the marital real estate at * * * Moraine, Ohio to Wife. Wife shall have one year from the date of this Decree to refinance the real estate in her own name or such property shall be immediately listed for sale and the proceeds or cost of such sale shall be Wife's alone.

Judgment Entry and Decree of Divorce (Dec. 30, 2004), Montgomery County Domestic Relations Court Case No. 2002-DR-1901, Docket No. 49, p. 6.

**{¶ 24}** Based on the parties' testimony at the contempt hearing, the trial court found that there is no dispute that both Lavonne and Rodney failed to comply with Article XIII of the divorce decree. Rodney admitted that he did not provide a quitclaim deed to Lavonne within seven days of the divorce decree, as he quitclaimed the marital real estate to her on November 4, 2015. Lavonne also admitted that she has not yet refinanced the marital real estate in her name as required by the decree. Accordingly, there is no question that there was non-compliance with a court order. Therefore, we are left with

the issue of whether the trial court abused its discretion in finding that Lavonne successfully demonstrated her inability to comply with the refinance order.

**{¶ 25}** Rodney testified that after the divorce, Lavonne had on certain occasions asked him for more time to refinance the property in her name. Rodney further testified that "to be as fair as possible" he gave Lavonne more time as requested, but would stress to her that she needed to get the matter taken care of. Hearing Trans. (June 22, 2016), p. 32-33. Rodney indicated that refinancing the loan in Lavonne's name became a priority for him in 2015, because having the loan in his name had negatively affected his credit and prevented him from purchasing a new home. Rodney later quitclaimed the real estate to Lavonne on November 4, 2015, approximately 11 years after their divorce.

**{¶ 26}** Based on this evidence, the trial court found that Rodney implicitly waived the refinancing requirement up until it became an issue for him purchasing a new home in 2015. The trial court further found that the quitclaim of Rodney's interest in the home was a necessary step for Lavonne to refinance the real estate in her name because it was unlikely that any financial institution would consider providing a loan solely to Lavonne when Rodney still had a priority interest in the real estate. The trial court, therefore, concluded that until Rodney quitclaimed the property to her, Lavonne was unable to comply with the refinancing order.

**{¶ 27}** The trial court also found that Lavonne attempted to refinance the loan through Evolve Bank & Trust in October 2015. The trial court further found that there was an arrearage on the marital residence's mortgage loan that prevented Lavonne from being able to refinance the loan, as the trial court reasoned it was unlikely that any financial institution would extend Lavonne credit to refinance the loan in her name when

there is a history of non-payment.

{¶ 28} The foregoing findings are reasonable and supported by the record. Lavonne testified that the mortgagee of the marital real estate, Ocwen Financial Corporation, has refused to accept the quitclaim deed and that her efforts to refinance since the fall of 2015 have failed. Lavonne specifically testified that she had tried to refinance through Evolve Bank & Trust. In support of this testimony, she submitted Plaintiff's Exhibit No. 3, which is an October 2015 correspondence from Evolve Bank & Trust responding to her home loan application. Lavonne also testified that as of November 2015, the mortgagee of the marital residence has refused to accept her monthly mortgage payments, putting her in arrears on the mortgage loan.

{¶ 29} Although there is no testimony discussing the specific reason for the mortgagee refusing Lavonne's monthly payments, a review of the promissory note admitted as Plaintiff's Exhibit No. 1 indicates that the mortgage loan at issue required the parties to make monthly installment payments beginning on December 13, 2000, with a final balloon payment of the outstanding principal balance and unpaid interest due on November 13, 2015. While Lavonne testified that she has made all of her monthly installment payments between December 2004 and November 2015, the record indicates that Lavonne thereafter needed assistance with the remainder of her mortgage loan. Lavonne testified that she requested assistance from the Housing Source, a county foreclosure intervention program. In support of this testimony Lavonne submitted Plaintiff's Exhibit No. 4, which is an application for assistance and hardship statement that Lavonne claimed she signed and submitted to the Housing Source on June 2, 2016.

{¶ 30} As noted earlier, Rodney objects to the admissibility of Plaintiff's Exhibit

Nos. 3 and 4 on grounds that the documents constitute inadmissible hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). "To constitute hearsay, two elements are needed. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted. If either element is not present, the statement is not 'hearsay.' " (Footnote and citations omitted.) *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984). *Accord State v. Tate*, 2d Dist. Montgomery No. 25386, 2013-Ohio-5167, ¶ 75.

**{¶ 31}** An out of court statement is not hearsay if it "is offered to prove a statement was made and not for its truth, * * * to show a state of mind, * * * or to explain an act in question." *Maurer* at 262. *Accord State v. Williams*, 38 Ohio St.3d 346, 348, 528 N.E.2d 910 (1988) (finding "[a] statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents"). We review rulings regarding hearsay under an abuse-of-discretion standard. (Citation omitted.) *State v. Williams*, 2d Dist. Montgomery No. 26369, 2016-Ohio-322, ¶ 17.

**{¶ 32}** In ruling on the hearsay issue, the trial court found that the magistrate considered Plaintiff's Exhibit Nos. 3 and 4 for the limited purpose of corroborating Lavonne's testimony that she had contacted Evolve Bank & Trust in an attempt to refinance her mortgage and that she had requested mortgage assistance from the Housing Source. Accordingly, the trial court concluded that because the magistrate did not accept the exhibits for the truth of the matters asserted in them, but rather to corroborate Lavonne's testimony regarding her financial difficulties and her efforts to

refinance the loan, the information elicited from the exhibits and considered by the magistrate was not hearsay.

**{¶ 33}** Although the magistrate allowed Lavonne to reference her credit report in the correspondence from Evolve Bank & Trust and to read the contents of her hardship statement in the Housing Source application on the record, we nevertheless agree with the trial court that said information was used to prove Lavonne's actions, i.e., that she sought financial assistance, rather than to prove the truth of the documents' contents. Because the magistrate did not otherwise permit Lavonne to testify regarding the contents of Plaintiff's Exhibit Nos. 3 and 4, and indicated on the record that she was going to "allow the documents in for what they are worth," we do not find the trial court's hearsay ruling was an abuse of discretion.

**{¶ 34}** That said, we cannot say, based upon this record, that the trial court abused its discretion in finding Lavonne unable to comply with the refinancing order in the divorce decree. The trial court is in the best position to assess the credibility of the witnesses and to weigh the evidence presented. Based on the testimony and evidence presented, it was reasonable for the trial court to conclude that Rodney impliedly waived the refinance requirement until 2015, and that Lavonne was otherwise prevented from refinancing until Rodney quitclaimed the marital real estate to her. We also find that it was reasonable for the trial court to conclude that Lavonne has since attempted to refinance the marital residence in her name and that her financial difficulties prevent her from doing so. However, since Lavonne has not refinanced as required, the divorce decree mandates the property be listed for sale immediately. Therefore, it was reasonable for the trial court to order the marital real estate to be listed for sale.

{¶ 35} For the foregoing reasons, we conclude that the trial court's decision overruling in part and sustaining in part Rodney's objections to the magistrate's decision on the motion to show cause was not an abuse of discretion.

{¶ 36} Rodney's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 37} Rodney's Second Assignment of Error is as follows:

THE TRIAL COURT'S DECISION TO OVERRULE DEFENDANT-APPELLANT'S MOTION TO MODIFY AND REDUCE THE CHILD SUPPORT PAYMENTS CONSTITUTED AN ABUSE OF DISCRETION.

{¶ 38} Under his Second Assignment of Error, Rodney contends that the trial court abused its discretion in overruling the motion to modify his child support obligation. In support of this claim, Rodney argues that the trial court failed to correctly calculate the deviation between the original and current child support computation guideline amounts because the court did not use Lavonne's correct gross income and did not grant him a deviation from the child support guidelines as a result of his daughter receiving social security disability benefits.

{¶ 39} "We review child support decisions for abuse of discretion." *Mossing-Landers v. Landers*, 2016-Ohio-7625, 73 N.E.3d 1060, ¶ 21 (2d Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). As previously noted, " '[a]buse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597. "When applying the abuse-of-discretion standard, an appellate court may

not merely substitute its judgment for that of the trial court." *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339, ¶ 12 (2d Dist.), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

**{¶ 40}** " 'In order to modify child support, the trial court must find a substantial change in circumstances, which is defined in R.C. 3119.79(A) as a ten-percent deviation from the amount of child support previously ordered.' " *Mossing-Landers* at ¶ 29, quoting *Howell v. Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533, ¶ 47 (2d Dist.). Therefore, "[w]hen a motion to modify is filed, the court must recalculate the amount of support that would be required to be paid by using the child support schedule and the applicable worksheet." *Cornell v. Cornell*, 2d Dist. Montgomery No. 26732, 2015-Ohio-5296, ¶ 9, citing R.C. 3119.79(A).

**{¶ 41}** " 'R.C. 3119.79(A) clearly provides that to determine whether a 10 percent difference exists, the court must compare the recalculated guidelines amount * * * to the "amount of child support required to be paid pursuant to the existing child support order" * * *.' " *Mossing-Landers* at ¶ 34, quoting *Williams v. Williams*, 10th Dist. Franklin No. 15AP-739, 2016-Ohio-3344, ¶ 9, quoting R.C. 3119.79(A) and citing *Moore v. Moore*, 5th Dist. Guernsey No. 09-CA-21, 2010-Ohio-2499. "If the amount deviates 10% more or less from the prior order, the statute states that 'the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.' " (Emphasis omitted.) *Cornell* at ¶ 9, quoting R.C. 3119.79(A). In that situation, "the trial court has no discretion, but must consider the amount a change of circumstances sufficient to require

modification." *Id.*

{¶ 42} That said, "[t]he starting point for determining the proper amount of child support to be paid is parental income, defined as gross income for those employed to full capacity or gross income plus potential income for those not employed to full capacity." *Wolf-Sabatino v. Sabatino*, 10th Dist. Franklin No. 12AP-1042, 2014-Ohio-1252, ¶ 7, citing *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 11 and R.C. 3119.01(C)(5).

{¶ 43} R.C. 3119.01(C)(7) defines "gross income," as follows:

[T]he total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested[.] * * * "Gross income" * * * includes * * * self-generated income; and potential cash flow from any source.

{¶ 44} In this case, Rodney contends that in determining whether there was a substantial change in circumstances warranting a modification of child support, the trial court incorrectly recalculated the child support guideline amount because the court did not use Lavonne's correct gross income. Specifically, Rodney claims the trial court's recalculation failed to include Lavonne's overtime hours, 401K withdrawal, and rental income.

{¶ 45} In recalculating child support, the magistrate found that Lavonne's gross income was $38,209.60. The magistrate arrived at this amount by considering three of Lavonne's weekly paystubs from 2016, which showed an hourly wage of $18.37 at 40 hours per week. The magistrate multiplied the hourly wage by 40 hours per week and then by 52 weeks per year. The magistrate also considered Lavonne's past tax returns for 2013, 2014, and 2015, which showed annual gross incomes of $39,017, $37,148 and $44,413. Based on these figures, the magistrate concluded that Lavonne has historically earned an income within the range that it had calculated.

{¶ 46} While Lavonne's income for 2015 is noticeably greater than in previous years, Lavonne testified that it was greater that year because she withdrew her 401K as a result of her employer, Synchrony Financial, splitting from its parent company. Instead of rolling her 401K over, Lavonne testified that she decided to withdraw it. Her 2015 tax return indicates that the 401K withdraw amounted to $7,582. Lavonne testified that her income in 2016 would not be as high as it was in 2015 due to the 401K withdrawal. Based on this evidence, the trial court determined that the magistrate did not err in failing to include the 401K withdrawal amount in calculating Lavonne's current gross income. We find the trial court's reasoning to be sound; accordingly, we do not find that the court abused its discretion in failing to consider the amount of the 401K withdrawal in calculating Lavonne's gross income.

{¶ 47} The trial court also found that the magistrate's gross income calculation did not include any of Lavonne's overtime pay. Although Lavonne testified that she receives overtime pay at time and a half, she noted that she does not work overtime often—usually only one hour per week. The three pay stubs Lavonne submitted as evidence support

this testimony, as they showed minimal overtime hours ranging between 1.1 and 1.6 hours a week. Based on this evidence, the trial court found there was no reasonable expectation of consistent overtime pay, and that the amount of overtime pay Lavonne received was minimal and would not significantly affect the child support computation. Accordingly, the trial court found the magistrate did not err in failing to include overtime pay when calculating Lavonne's gross income. We once again find that the trial court's reasoning is sound and not an abuse of discretion.

{¶ 48} In addition to the 401K withdrawal and overtime pay, the trial court found that the magistrate's calculation did not include rental income from a small one-bedroom house located on the lot of the marital real estate. Lavonne testified that she and Rodney had received rental income from the house when they were married and included it on their tax returns. However, Lavonne indicated that since their divorce, she has, on occasion, allowed family members to reside in the rental property, but that they did not make regular rental payments. More specifically, Lavonne testified that she had allowed her nephew to reside on the rental property and that he did not pay her rent most of the time, but when he did, he gave her $350 as a monthly payment. Because she did not receive regular rental payments, Lavonne testified that she did not include any rental income on her tax returns. Lavonne further testified that the rental property has been vacant for the past six months. No other information or documentation was provided to the trial court to reflect when or how much rent was collected before or after the parties' divorce.

{¶ 49} Rodney claims that despite the fact that little to no rent was collected since the parties' divorce, and despite the rental property being vacant for the past six months,

the potential rental income that could be generated from the property should still have been included as part of Lavonne's gross income since the statutory definition of "gross income" in R.C. 3119.01(C)(7) includes "potential cash flow from any source."

**{¶ 50}** In support of this argument, Rodney cites to *Bishop v. Bishop*, 4th Dist. Scioto No. 03CA2908, 2004-Ohio-4643. In *Bishop*, the trial court found "that the definition of 'gross income' for purposes of calculating child support includes potential cash flow from any source[,]" and held that there was competent credible evidence in the record to impute rental income to each of the parties' respective gross incomes even though the rental property was not currently being rented nor in a condition to be rented. *Id.* at ¶ 2, 14-20. Rodney argues that, like *Bishop*, there was competent credible evidence in the record to attribute $350 per month in potential rental income to Lavonne's gross income as a result of the rental property located on the marital real estate.

**{¶ 51}** In *Bishop*, however, the parties specifically testified regarding how much rental income they had regularly collected in the past and regarding the property's current rental value. *Id.* at ¶ 17-18. While Lavonne testified that she received irregular payments from her nephew in the amount of $350, the magistrate was not otherwise provided with information or documentation indicating when or how much total rent was collected from him. There was also no testimony or evidence submitted establishing how much rent was collected while the parties were married. Moreover, no testimony or evidence was submitted establishing how much the property could currently be rented for. As a result, the trial court concluded that the magistrate was provided with insufficient information to determine rental income, and, therefore, did not err in failing to include any such income when calculating Lavonne's gross income for purposes of the

child support computation.

{¶ 52} Although the definition of "gross income" does include "potential cash flow from any source" we do not find that the trial court's decision was unreasonable. Not only does the record indicate that there was very little information to make a rental income determination, but it also indicates that Lavonne works full time and cares for the parties' daughter, who has a disability. Accordingly, the trial court could have reasonably concluded that Lavonne undertakes significant responsibilities, which make it difficult for her to assume the responsibility of being a landlord as well. Therefore, we find the trial court did not abuse its discretion in failing to attribute rental income to Lavonne's gross income calculation for purposes of the child support computation.

{¶ 53} Rodney also contends that the trial court failed to consider D.J.A.'s social security disability benefits that Lavonne began to receive on D.J.A.'s behalf in December 2015. Rodney claims that the trial court should have granted him a deviation from the basic child support computation worksheet guidelines as a result of those benefits.

{¶ 54} R.C. 3119.22 governs such deviations and provides that:

The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be

in the best interest of the child.

{¶ 55} R.C. 3119.23, formerly codified as R.C. 3113.215(B)(3), provides the factors a court may consider in determining whether to grant a deviation, and includes the "financial resources and earning ability of the child." R.C. 3119.23(F). However, the magistrate found, and the trial court agreed, that pursuant to *Paton v. Paton*, 91 Ohio St.3d 94, 742 N.E.2d 619 (2001), "[s]upplemental security income benefits received by a disabled child do not constitute a financial resource of the child pursuant to [R.C. 3119.23(F)] for purposes of justifying a trial court's deviation from the basic child support schedule." *Id.* at syllabus.

{¶ 56} In *Paton*, the magistrate treated the social security benefits of a child with a disability as a financial resource of the child and deducted an amount representing the social security benefits from the parents' combined annual support obligation. *Id.* at 94-95. The Supreme Court found this was inappropriate and explained that: "[w]hile we do not dispute that SSI benefits are arguably a financial resource of a recipient, we do not believe that SSI benefits are the type of 'financial resource' that justifies a trial court's decision to deviate from the basic child support schedules." *Id.* at 96. Rather, the court found that "SSI benefits received by a disabled child 'are intended to supplement other income, not substitute for it.' " *Id.* at 97, quoting *Oatley v. Oatley*, 57 Ohio App.2d 226, 228, 387 N.E.2d 245 (6th Dist.1977).

{¶ 57} The Supreme Court further explained that:

[R]educing a parent's child support obligation by an amount representing the child's SSI benefits "would frustrate the purpose of the federal law by pushing the child's standard of living back below the federal

minimum." Such an approach would result in a "stair-step" effect that would increase the child's reliance on federal assistance while decreasing the parents' financial responsibility, because as the child's SSI benefits increase, the parents' support obligation simultaneously decreases. In order to avoid this unintended and absurd result, "[t]he amount of supplemental security income received is modified as the amount of the recipient's other income changes, not vice versa." *Oatley*, 57 Ohio App.2d at 228, 11 O.O.3d at 262, 387 N.E.2d at 246.

Parents, to the extent that they are able, have an obligation to support their minor children. In situations where a child is eligible to receive SSI, *these benefits are intended to supplement the parents' support obligation, not to reduce it. Consequently, we find that supplemental security income benefits received by a disabled child do not constitute a financial resource of the child pursuant to R.C. 3113.215(B)(3)(f) for purposes of justifying a trial court's deviation from the basic child support schedule.*

(Emphasis added.) *Paton* at 97.

**{¶ 58}** Nevertheless, Rodney urges this court to ignore the holding in *Paton* and instead follow the holding in *Huff v. Huff*, 9th Dist. Summit No. 20934, 2003-Ohio-1304, wherein the Ninth District Court of Appeals affirmed the trial court's inclusion of monthly social security disability benefits received by the appellant's children into appellant's gross income when calculating child support. *Id.* at ¶ 9-15. In reaching this conclusion, *Huff* relied on the Supreme Court's prior holding in *Williams v. Williams*, 88 Ohio St.3d 441,

727 N.E.2d 895 (2000), wherein the court addressed social security disability benefits in the context of a parent's disability, rather than a child's disability.

{¶ 59} In *Williams* the Supreme Court found that:

[T]he underlying intent behind Social Security payments to a child is to provide support that the disabled parent is unable to provide. Thus, Social Security benefits are characterized as a substitute for the disabled parent's earnings rather than gratuities from the federal government. * * *

By recognizing that Social Security benefits are not gratuities from the federal government, but are earned by the disabled parent, these courts realize that unlike welfare and other forms of public assistance, Social Security benefits represent contributions that a worker has made throughout the course of employment; in this sense, benefits represent earnings in much the same way as do benefits paid by an insurance company. * * * Consequently, since the Social Security payments are deemed income of the disabled parent that enure to the sole benefit of the child, these courts allow that parent to receive a credit against his or her support obligations.

*Williams* at 443.

{¶ 60} *Paton* specifically distinguished the holding in *Williams* because in *Williams* it was the obligor parent, rather than the child, who had a disability. *Paton,* 91 Ohio St.3d at 95, 742 N.E.2d 619, fn. 2. Accordingly, from this court's perspective, the Ninth District's reliance on *Williams* in *Huff* is misplaced with respect to social security benefits of children with disabilities. *Paton* clearly holds that supplemental security income

benefits received by a child with a disability do not constitute a financial resource of the child for purposes of justifying a trial court's deviation from the basic child support schedule. *Id.* at syllabus. As a result, we find the trial court did not abuse its discretion in applying the holding in *Paton* and in finding that the magistrate did not err in failing to grant Rodney a deviation from the child support worksheet computation as a result of D.J.A.'s social security disability benefits.

{¶ 61} For the foregoing reasons, Rodney's Second Assignment of Error is overruled.

## Conclusion

{¶ 62} Having overruled both assignments of error raised by Rodney, the judgment of the trial court overruling his motion to show cause and motion to modify child support is affirmed.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Carol J. Holm
Jeffrey D. Slyman
Hon. Timothy D. Wood