[Cite as *G.P. v. L.P.*, 2022-Ohio-2156.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| G.P | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| L.P (KNA N.M.M) | : | Case Nos. 2021 CA 0011 |
| | : | 2021 CA 0013 |
| | : | 2021 CA 0014 |
| | : | |
| Defendant-Appellee | : | SUPPLEMENTAL OPINION UPON MOTION TO RECONSIDER |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas, Case No. 2014 JUCST 74

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     June 22, 2022

APPEARANCES:

For Plaintiff-Appellant

ANTHONY W. GRECO
SUSAN M. SURIANO
4945 Bradenton Avenue
Suite 100
Dublin, OH  43017

For Defendant-Appellee

PRIYA D. TAMILARASAN
175 S. Third Street
Suite 200
Columbus, OH  43215

*Wise, Earle, P.J.*

{¶ 1}  Pursuant to our Judgment Entry filed this same date granting G.P.'s (Father's) Motion to Reconsider, we address Father's assignments of error I(B) and V as originally raised in *G.P. v. L.P*, 5th District Morrow Nos. 2021CA0011, 2021CA0013, 2021CA0014, 2022-Ohio-1373.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  This matter involves continuous litigation dating back to 2015. The facts and procedural history are extensive and are fully set forth in our April 25, 2022 opinion in *G.P. v. L.P*, 5th District Morrow Nos. 2021CA0011, 2021CA0013, 2021CA0014, 2022-Ohio-1373. We will not repeat those facts in their entirety. A brief background relevant to Father's motion for reconsideration is as follows:

{¶ 3}  On September 24-25, 2020 a trial was held before a magistrate regarding numerous motions including Father's July 15, 2019 motion to modify child support. On November 16, 2020, the magistrate issued a 34-page decision finding in part that Father provided no real evidence of his income, appeared to be voluntarily underemployed, and failed to provide enough information for the magistrate to estimate Father's potential income in Ohio if fully employed. The magistrate therefore denied Father's motion to modify child support.

{¶ 4}  The magistrate further set a visitation schedule per recommendation of the GAL which included a phased-in return to Local Rule 2 visitation. Per the judgment entry "[p]rogress from one phase to the next would be determined by the success of the previous month and per interaction with the children with the Guardian Ad Litem (GAL) or some other court-appointed advocate." The magistrate ordered the GAL to remain

involved in the case to facilitate visitation and ordered Father to deposit the sum of $1,500 with the GAL and bring the bill for the GAL current on or before January 1, 2021.

{¶ 5}   Father timely objected to the magistrate's findings.

{¶ 6}   On March 15, 2021, Mother filed a motion to modify temporary orders because Father relocated to Tennessee and had become increasingly hostile toward the children and the GAL visitation supervisor. A hearing was set for June 18, 2021 to address the matter of Father's relocation.

{¶ 7}   On May 7, 2021, Father filed a notice of relocation and provided his new address in Tennessee. He also filed a motion to modify the temporary orders regarding parenting time in light of his relocation. On May 10, 2021, the trial court set a hearing on Father's motion to modify for the same day as Mother's motion to modify, June 18, 2021.

{¶ 8}   Meanwhile, before ruling on Father's objections the trial court remanded the matter back to the magistrate to gather some details regarding where Father was living. Magistrate's Decision, June 18, 2021; transcript of hearing, June 18, 2021 at 16.

{¶ 9}   On June 11, 2021, Father filed a motion for contempt against the GAL and a motion to remove the GAL. In his motion for contempt, Father alleged the GAL was in violation of Morrow County Local Rule 13.07(10) in that she had failed to provide Father with a billing statement. Father also alleged the GAL had refused to facilitate visitation until her fees were paid by Father as ordered. Father paid the GAL's fees through January 2021 and supervised Zoom calls resumed until March 18, 2021. Thereafter, the GAL advised the magistrate in an email that Father was becoming increasingly hostile towards her during calls with the children and with both her and Mother in emails, text messages, Our Family Wizard (OFW), and in demanding and menacing voice mails. The GAL further

advised the magistrate she was unwilling to supervise any further Zoom calls as she did not believe they were in the children's best interests. Father requested a hearing on the matter. In his motion to remove the GAL, Father cited the same grounds and argued the GAL's refusal to facilitate Zoom visitation until she was paid is unacceptable, and her emails to the court and counsel regarding lack of payment and Father's hostility reflected her inability to remain independent and objective.

{¶ 10} Present at the June 18, 2021 hearing were Father, Mother, counsel for each, the children's attorney William Leber, and the GAL. Directly before the hearing the magistrate and the GAL met with three of the four children at issue here. One child was away at camp. Also present for the in-camera hearing were the GAL and Attorney Leber. The GAL requested the in-camera interview in an attempt to move visitation forward. On the record the magistrate indicated:

> The other things that are pending are a motion for contempt against the Guardian ad Litem and a motion to remove the Guardian ad Litem.
> I am going to rule on those today with or without testimony. I think I know what is going on here. And I'm not going to remove the Guardian Ad Litem at this time for a couple reasons.
> One, the children have a very good relationship with her. They feel very comfortable with her. They said of the three Guardian ad Litems, they like her best, which I thought was interesting.

At this point it would be way too costly to appoint a new Guardian ad Litem. And then, you know, you have the emotional issue of the kids bonding with a new Guardian ad Litem, getting to know a new Guardian ad Litem, and the cost of the Guardian ad Litem reading the file.

I cannot find that the Guardian ad Litem is in contempt of court. She did exactly what she was asked to do in this case. And if you read the temporary orders that are in effect, it pretty much – I pretty much laid this in her lap, and maybe that was unfair to the Guardian, but one of the things I put in there was progression to the next month will be determined by the success of the previous month and per interaction with the children with the GAL or some other court-appointed advocate.

So, you know, I left it within [the GAL's] discretion as to whether it progressed. And she did notify folks in March that it was not going to progress. So, you know, I – I am not going to find her in contempt at this point.

Now, what I will do is I will put that in writing. You may appeal it to the Judge. The Judge already has the case. He can look at it and see whether he wants me to take more testimony on it. Or if you want to present testimony today, I'll allow that. But that's where we're going with it. If you present testimony today, I will listen to it with an open mind and then I will make a ruling after that.

{¶ 11} Transcript of hearing, June 18, 2021, 14-16.

{¶ 12} The magistrate then indicated the matter had been remanded to her to determine where Father was living. She placed Father under oath and then asked "questions that the Judge wanted answered." In response to the magistrate's questions, Father testified he moved to Tennessee in January 2021 and described his single-family home situated on one hundred acres. He stated he lived there with his wife and their two children. *Id.* 16-17. He testified he was self-employed doing handyman and construction type work. He stated he and his wife had not yet filed their 2020 taxes but he thought he had made $36,000 in 2020. *Id.* 19.

{¶ 13} Father further testified he sold his home in Ohio but was not sure if he sold it for $440,000 or $340,000. Counsel for Mother produced her exhibit A, a document which indicated Father sold the home for $375,000. The home was purchased for $220,000. Id. 20, 27.

{¶ 14} Following questioning of Father, the magistrate asked counsel for Father if he desired to present any evidence on Father's motion to remove the Guardian Ad Litem. Counsel indicted he was not prepared to go forward as the magistrate had communicated in an email that the motions would be formally addressed at a later date after the trial court ruled on Father's objections. The magistrate indicated the matter could be set for a later date if the trial court desired testimony, but also indicted she believed the trial court wanted her to rule on the matter. Father was advised that if the trial court wanted the matter to go to a hearing, Father would be responsible for the GAL's attorney fees. *Id.* 29-30.

{¶ 15} In the June 18, 2021 judgment entry, the magistrate found: (1) Father had relocated to Tennessee and was living with his wife and two children; (2) Father would have supervised visitation with the children that same day; (3) future facilitation of visitation was a possibility; (4) Father's motions to remove the GAL and further find the GAL in contempt were found to be frivolous and were denied.

{¶ 16} Father objected to the magistrate's rulings. In overruling Father's objection to the magistrate failing to remove the GAL, the trial court found the magistrate was aware of the GAL's actions throughout the case and had ample information regarding her work on the case. No additional evidence was therefore required in order for the magistrate to make a decision. As for the motion for contempt, in its September 7, 2021 judgment entry, the trial court found:

> The basis of the motion for contempt against the Guardian was the Guardian's alleged failure to continue working on a visitation schedule for [Father] after he failed to pay in violation of prior court orders. The Magistrate instructed the Guardian not to continue working on the case until she was paid by [Father] for work already completed. The instruction, via email, was forwarded to both parties and the Guardian. The Guardian ad Litem is not an attorney and was therefore unable to file a formal motion. In retrospect, the Magistrate should have appointed an attorney to represent the Guardian ad Litem and made a formal ruling. However, the result would have been the same. The Guardian is not obligated to work without being

paid for her services, especially when [Father's] actions were causing additional Guardian's fees. Again, the Magistrate had ample evidence in the already voluminous record to make a decision.

{¶ 17} We now turn to the assignments of error we declined to address in *G.P. v. L.P*, 5th District Morrow Nos. 2021CA0011, 2021CA0013, 2021CA0014, 2022-Ohio-1373, specifically Father's assignments of error I(B) and V.

I(B)

{¶ 18} IT WAS AN ERROR OF LAW AND AN ABUSE OF DISCRETIONFOR THE TRIAL COURT TO CONSIDER TESTIMONY FROM OUTSIDE THE RECORD FORM A HEARING HELD ON JUNE 18, 2021 BEFORE THE MAGISTRATE WHEN RULING ON OBJECTIONS FROM THE NOVEMBER 16, 2020 MAGISTRATE'S DECISION.

V

{¶ 19} THE TRIAL COURT ABUSED ITS DISCRETION AND MADE AN ERROR OF LAW WHEN IT DENIED APPELLANT'S MOTION FOR CONTEMPT AGAINST THE GUARDIAN AD LITEM.

I(B)

{¶ 20} Father's first assignment of error set forth three separate arguments regarding the imputation of his income at $285,467 for purposes of child support. Father designated these sub arguments as A, B, and C. In our April 25, 2022 opinion, we addressed sub arguments A and C. We declined to address argument B due to the lack of a transcript. We now address that argument wherein Father argued the trial court considered information outside the record in arriving at the imputed income figure.

Specifically, Father argued the information that Father had moved to Tennessee and sold his home in Ohio that had a $220,000 mortgage on it for $375,000 was outside the record. We disagree.

{¶ 21} As outlined in the above stated facts, the trial court remanded the matter back to the magistrate specifically for a determination of these matters. Further, father did not object to the any of the questioning by the magistrate regarding those matters. Because the information Father argues is outside the record appears in the June 18, 2021 transcript it is not information outside the record.

{¶ 22} The first assignment of error is overruled in its entirety.

V

{¶ 23} In his fifth assignment of error, Father argues the trial court abused its discretion and made an error of law by failing to hold a hearing on his motions for contempt against the GAL. Father complains he was owed a formal evidentiary hearing with proper notice of the same pursuant to R.C. 2705.05. We disagree.

Standard of Review

{¶ 24} Father cites *In re G.B.* 2d Dist. Montgomery No. 27992, 2019-Ohio-236 in support of his argument that the trial court abused its discretion in ruling on his motions for contempt without a hearing. In that matter, the court set forth the standard of review:

> It is within a trial court's discretion whether to provide a litigant seeking a contempt finding an evidentiary hearing. *Hillman v. Edwards*, 10th Dist. Franklin No. 10AP-950, 2011-Ohio-2677, ¶ 29. A court abuses its discretion when a judgment is unreasonable,

arbitrary, or unconscionable. *Abrams v. Abrams*, 2017-Ohio-4319, 92 N.E.3d 368, ¶ 19 (2d Dist.). Most often, a trial court's judgment constitutes an abuse of discretion because it is unreasonable, with an unreasonable judgment being one where there is "no reasoning process" supporting the judgment. *Id.*, quoting *DeWitt v. DeWitt*, 2d Dist. Darke No. 1386, 1996 WL 125920, *2 (March 22, 1996). A trial court, assuming factual issues exist, abuses its discretion by denying a contempt motion without conducting an evidentiary hearing. *State ex rel. Dewine v. C & D Disposal Technologies, L.L.C.*, 7th Dist. Jefferson No. 11 JE 19, 2012-Ohio-3005. Conversely, a trial court does not abuse its discretion by overruling a contempt motion without conducting an evidentiary hearing when the record, in the absence of a hearing, allows such a determination. *Burchett v. Burchett*, 4th Dist. Scioto No. 16CA3784, 2017-Ohio-2667.

Contempt Proceedings

{¶ 25} Contempt may be civil or criminal, indirect or direct. Criminal contempt ordinarily involves " 'offenses against the dignity or process of the court.' " *State ex rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 55, 495 N.E.2d 16, 18-19, 25 O.B.R. 77 (1986), quoting *State v. Local Union 5760*, 172 Ohio St. 75, 82-83, 173 N.E.2d 331 (1961). Civil contempt generally involves " 'violations which are on their surface offenses against the party for whose benefit the order was made.' " *Id.*, quoting *Local Union 5760*, 172 Ohio St. at 82-83. " 'A direct contempt is one committed in the presence

of or so near the court as to obstruct the due and orderly administration of justice.' " *Id.* at 57, quoting *In Matter of Lands*, supra, 146 Ohio St.2d at 595, 67 N.E.2d 433. " 'An indirect contempt is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice.' " *Id.*

{¶ 26} As Father accurately points out, O.R.C. chapter 2705 applies to contempt proceedings. R.C. 2705.03 provides:

> In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the *accused* to be heard, by himself or counsel. * * *.

{¶ 27} Emphasis added.

{¶ 28} Next, R.C. 2705.05(A) states:

> In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the *accused* makes or offers and shall determine whether the accused is guilty of the contempt charge.

{¶ 29} Emphasis added.

{¶ 30} In *Hillman v. Edwards*, 10th Dist. Franklin No. 10AP-950, 2011-Ohio-2677 at ¶ 29, the Tenth District Court of Appeals addressed a complaint similar to that of Father and noted:

> The purpose of a contempt hearing is to provide the *accused* with the opportunity to explain his actions. *Fant v. Bickerstaff* (July 1, 1999), 8th Dist. No. 72124. In contempt proceedings, the statutory provisions and due process require that the *accused* be provided an opportunity to be heard, but it is within the trial court's discretion whether to give the complainant a hearing. *Taylor v. Taylor* (May 27, 1993), 8th Dist. No. 62249, citing *Perry v. Emmett* (June 16, 1988), 8th Dist. No. 53997. * * *

{¶ 31} Emphasis added.

### Father's Complaints

{¶ 32} While Father is correct that Chapter 2705 of the Revised Code sets forth minimal constitutional due process protections, these safeguards, which he complains he was not afforded, apply to the accused not Father, and it was within the trial court's discretion whether or not to provide Father with a hearing.

{¶ 33} We also note Father's complaints regarding the fact that the magistrate had previously stated in an email to counsel that a hearing would take place on Father's motions regarding the GAL after the trial court completed its review of Father's pending objections, but then went ahead and addressed the matter at the June 18, 2021 hearing.

While this was contrary to the magistrate's email, Father was nonetheless given an opportunity to present evidence during the hearing at which the GAL was present and declined to do so. Transcript of June 18, 2021 hearing 29-30.

{¶ 34} Moreover, we find that in this matter, the record allows determination of Father's motion for contempt without a hearing. First, as to Father's argument that the GAL failed to provide him with a bill, as noted in the magistrate's June 18, 2021 judgment entry, it was Father who violated prior court orders by failing to pay the GAL as ordered on November 16, 2020. Father was specifically ordered to deposit $1500 with the GAL and bring her bill current on or before January 1, 2021. Six months after the fact, and for the first time, Father instead attempted to blame the GAL for allegedly failing to comply with billing requirements. We agree with the trial court's characterization of the motion as frivolous, and further find the trial court did not abuse its discretion in denying the same.

{¶ 35} Next, as noted by the trial court in its September 7, 2021 judgment entry, the record in this matter is voluminous. The parties have been in constant litigation since 2015 giving the magistrate and trial court a front-row seat to their lives. The children are acutely aware of the raging battle between their parents, have tired of the battle, and are uncomfortable around Father due to his constant lobbying for them to see things his way.

{¶ 36} The record reflects that following Father's decision to have his process server serve stepfather and his oldest child at the children's soccer game, the already tenuous relationship between father and his three oldest children deteriorated. The children advised their attorney William Leber that they either did not want to be around Father, or wanted less time with Father and conditions imposed when in Father's company. Transcript of September 24-25, 2020 trial 39-43. While the magistrate indicated

Attorney Leber's testimony was not evidence for purposes of the trial, the information is nonetheless relevant to the GAL's role going forward, and facts upon which the magistrate could base her opinion regarding the reinstitution of visitation.

{¶ 37} The magistrate tasked the GAL with repairing the relationship between Father and his children via a phased approach to Father's visitation beginning with Zoom visits in December 2021 supervised by the GAL and progressing to unsupervised in-person visits of lengthening duration each month thereafter. The magistrate specifically ordered that progression from one month to the next would be determined by the GAL based on the success of the previous month's interaction with the children. Magistrate's Decision, June 18, 2021. The GAL did exactly as she was ordered by the trial court. Transcript of June 18, 2021 hearing 15-16.

{¶ 38} Instead of cooperating with the phased-in return to visitation with his children, Father instead filed his motion asking the court to remove the GAL when the GAL suspended visits due to Father's poor behavior during supervised visits. Based on that suspension, immediately before the June 18, 2021 hearing the magistrate held in-camera interviews with three of the four children as one was away at camp. Also present for the in-camera interviews were the GAL and the children's Attorney William Leber. The in-camera interviews were requested by the GAL in an attempt to move visitation forward. June 18, 2021 Judgment Entry.

{¶ 39} Following the interviews, on the record, the magistrate clearly set forth her reasoning for denying Father's motion to remove the GAL being first and most important that the children have a good relationship with the GAL and feel comfortable talking to her. Additionally, appointing a new GAL would have a negative emotional impact on the

children in getting to know and bonding with a new GAL. Finally, appointing a new GAL to review the already voluminous file would be costly. Transcript of June 18, 2021 hearing, 14-16.

{¶ 40} Based on the forgoing, because the record allows for such determination we find the trial court did not abuse its discretion in denying Fathers motion for contempt against the GAL and his motion to remove the GAL without a hearing.

{¶ 41} The final assignment of error is overruled.

{¶ 42} Having treated appellant's assignments of error I(B) and V, and having disposed of his remaining claims of error via our April 25, 2022 Memorandum-Opinion *G.P. v. L.P*, 5th District Morrow Nos. 2021CA0011, 2021CA0013, 2021CA0014, 2022-Ohio-1373, the judgment of the Morrow County Court of Common Pleas Juvenile Division remains affirmed.

By Wise, Earle, P.J.

Wise, J., J. and

Delaney, J. concur.

EEW/rw